Allen, J..
 

 The complaint claimed, first, that the certificate of the Norwood Bus Company did not authorize it to drive more than two cars, nor to substantially increase seating capacity except upon application to the commission, and approval of the increase; and, second, that issuing notes and chattel mortgages without the consent of the commission constituted ground for the revocation of the certificate.
 

 Is the motorbus company authorized under the statute upon its own motion, to increase thfe number of cars which it has in operation and to substantially increase seating capacity1? The testimony of Carley, as shown by the record, is to the effect that in April, 1923, he was operating two Biederman 24-seatecl cars. At the time of filing the complaint he had five Fageol cars, of 58 seats each, having put this new equipment upon the road without applying to the commission for authority for so doing. One of these Fageol cars was reserved for emergency service, so that four cars, of 58 seats each, were being continually operated.
 

 The statute governing the question is Section 614-93, General Code, which reads as follows:
 

 “Any motor transportation company as defined in this chapter may, at any time after a certificate is granted or refused, file a new application or supplement any former application, for the pur
 
 *672
 
 pose of changing, extending or shortening the route, or increasing or decreasing the number of vehicles, or for the doing of any other act or thing which the applicant might be permitted to do under the general statutory laws and regulations of the state of Ohio.”
 

 The complainant claims that this statute is mandatory and that under this provision the operator desiring to increase the number of cars was compelled to apply to the commission for permission so to do. The commission held .that the statute was not mandatory, and was only permissive. Hence, in effect, the commission held that the operator himself was the judge as to whether he should increase his service, and was also a judge of the increase necessary. Evidently the commission grounds its decision upon the use of the word “may” in Section 614-93. This word usually does have a permissive connotation. However, it is evident, upon reading the statute, that the word here may be used in either of two senses: The section may mean that it is optional with the operator to apply to the commission for authority to increase service; or it may mean that the operator is authorized and hence directed to apply to the commission whenever he desires such an increase. The latter theory is borne out by the decision of this court in the case of
 
 Northern Ohio Traction & Light Co.
 
 v.
 
 Pub. Util. Comm., ante,
 
 93, 148 N. E., 584, the second paragraph of the syllabus of which reads:
 

 “An application before the Public Utilities Commission to change, extend, or shorten a route, or to increase or decrease the number of vehicles em
 
 *673
 
 ployed in motor transportation service under a certificate theretofore issued by the commission, can only be heard by the commission in accordance with the notice required by Section 614-91, General Code.”
 

 Counsel for the commission, however, claim that this decision does not here apply, because by its plain terms it is applicable only in the case where an application is made before the Public Utilities Commission, and hence not to this case, where, upon the conceded facts, no application was filed.
 

 Proceeding, therefore, to consider the question from its broader aspects, we observe that the statute nowhere declares that the operator is the judge of the necessity for an increase in service. In fact the statute as a whole distinctly provides that the Public Utilities Commission is the judge of such necessity for service. The statute does not contemplate unrestricted competition between motorbus companies. It emphatically provides for prevention of unrestricted competition, ordering the Public Utilities Commission to refuse new certificates in cases where existing motor transportation is already adequate (Section 614-87, General Code), and requiring the Public Utilities Commission to find that the public necessity and convenience demand the service when certificates issue.
 

 Bearing this fact in mind, we think there was little point in enacting Section 614-93, if it is optional with the operator whether he makes the application. Why give the operator permission to apply to the commission for an increase in service if he need not apply to make that increase?
 

 Considering further the wording of Section 614-
 
 *674
 
 93, we find that the section specifies a number of requests which the operator may make of- the Public Utilities Commission. He may apply to the commission to shorten, extend, or change the route. It is not claimed that an operator can change his route without making an application to the Public Utilities Commission, and indeed the whole purpose of the law would be nullified if that could be done. This provision in its general features, therefore, is mandatory. It is enjoined upon the operator that he cannot change his route, either to shorten, extend or operate in a different direction, without the authority of the commission. Now, if it is mandatory upon the operator to apply to the commission for change in route, is it reasonable to hold that it is optional for him to apply for an increase in vehicles, when the permission to make this application is given in exactly the same sentence with the permission to apply to shorten, extend, and change his route? We think not, and hold that the section is mandatory upon the operator in all of its provisions.
 

 We have already held in the case of
 
 Cincinnati Traction Co.
 
 v.
 
 Pub. Util. Comm.,
 
 111 Ohio St., 681, 146 N. E., 84, that an operator can substitute one car for another. In that case, however, it did not appear that the car substituted gave such an increase of service as in this case, where two Biederman busses, each seating 24 passengers, were replaced by four Fageol cars, each seating 58 passengers, or indeed that it gave any increase in service. Here, however, as shown by the record, we do have an increase in service covered by the general clause in Section 614-93, for which, under
 
 *675
 
 the mandatory provisions of that section, application should be made to the commission.
 

 The further question arises whether these provisions apply to motorcars certificated as of right because of the fact that they were in operation upon April 28, 1923. We think they do apply. Section 614-87, G-eneral Code, which provides that the certificate shall issue upon filing of the affidavit of operation in good faith, if the commission finds the facts therein stated to be true, does not provide that a certificate of convenience and necessity shall authorize the operator to extend his service without regard to the regulatory powers of the commission. The plain intent of this section was to confirm the operator in the right which he was exercising upon April 28, 1923, and in no greater right. If this were not so, the operator by unlimited increase of motor service, could set at naught the powers of the commission to define the amount of service upon his particular route. This holding is in line with a leading decision from California, in which the motorbus law is similar to ours. Thus the case of
 
 Motor Transit Co.
 
 v.
 
 Railroad Comm. of Cal.,
 
 189 Cal., 573, 209 P., 586, construes a statute practically the same as the Ohio law upon the point involved in this case. The Supreme Court of California in that decision held that the commission was right in determining that only such service as was in actual operation prior to the date corresponding to April 28, 1923, in the California statute could be continued without the formal application required in the statute.
 

 The commission, therefore, was in error in dismissing the first complaint.
 

 
 *676
 
 The supplementary complaint filed by the traction company alleged that the respondent had violated Section 614-53 of the General Code, and asked revocation of the certificate upon that ground. Demurrer being filed to this supplementary complaint, the facts alleged must be taken to be true. Considering the allegations of the complaint as true, it appears that the respondent has issued promissory notes and chattel mortgages in the aggregate amount of more than $75,000, without the authority of the commission. This authority is specifically required in Section 614-53. Noncompliance with a mandatory statute might well constitute good ground for revocation. However, the commission is invested with discretion in deciding upon the facts whether or not good cause for revocation has been shown, and we do not consider that its decision upon this point constitutes an abuse of that discretion. The commission was therefore not in error in sustaining the demurrer to the supplementary complaint, but for its error in dismissing the first complaint the order must be reversed.
 

 Order
 
 reversed.
 

 Marshall, C. J., Jones, Matthias, Day, Kinkade and Robinson, JJ., concur.