Allen, J.
 

 The plaintiff in error raises thé following legal question in this proceeding, namely: Can a motor transportation company increase the number of vehicles employed in motor transportation service under a certificate theretofore issued upon an affidavit of actual operation on April 28, 1923, in accordance with the provisions of General Code, Section 614-87, without filing an application therefor and giving notice thereof as required by General Code, Section 614-91? This question has been answered in the negative in the case of
 
 Cincinnati Traction Co.
 
 v.
 
 Public Utilities Commission, post,
 
 668, 150 N. E., 308, this day decided, to which case we refer for reasoning and authority.
 

 This question, however, does not arise upon this record, for it is conceded by the briefs, and in the argument, and is evident from the record, that the motor transportation company did not upon its own motion increase the number of vehicles which it was operating, as was the case in
 
 Cincinnati Traction Co.
 
 v.
 
 Public Utilities Commission, supra.
 
 In this case the certificate granted as of right gave to Horch, Fissell & Davis the right to operate between Mt. Yernon and Columbus. In spite of that fact the Public Utilities Commission informally suggested that Horch and Davis increase their service, after which they placed
 
 *637
 
 busses in operation between Columbus and Westerville, although no application to operate between Columbus and Westerville was ever filed and no notice was given as required by General Code, Section 614-91. It is conceded that the Public Utilities Commission took this action after the receipt of a certain complaint in the form of a letter. This letter is in substance as follows:
 

 “Westerville, Ohio, December 31, 1924.
 

 “The Ohio Public Utilities Commission, Columbus, Ohio. — Gentlemen: I wish to register formal complaint with the commission against the inadequate transportation facilities now being furnished by the Columbus and Mt. Vernon bus line. To cite a specific instance I failed to obtain passage this evening on the north-bound bus leaving Columbus at 7 p. m. and arriving in Westerville about 7.25. This bus came through Westerville, evidently loaded to capacity, gave no warning of its approach, and refused to stop on signal. I waited some ten minutes, hoping that another bus might follow, but none came.
 

 “I travel back and forth between Westerville and points north almost daily, having to depend upon this mode of transportation, and can testify that the above incident is of frequent occurrence. * * * I might also mention the fact that passengers at the towns north of here, who wish to travel from one town to another, are entirely ignored a great deal of the time.”
 

 The Public Utilities’ Commission notified the writer of the letter that they would consider her complaint. They then summoned Horch, Pissell & Davis before them and shortly thereafter additional
 
 *638
 
 service wás established between Westerville and Columbus.
 

 This action hardly seems consistent with the complaint in the letter, for the letter specifically stresses the fact that the writer could not get on at Westerville and ride between Mt. Vernon and Westerville. Moreover, the writer stated that other people had complaint to make of the service between Westerville and Mt. Vernon; that is, her. complaint was directed to the service north of Westerville and not between Westerville and Columbus. The crowded condition of the cars between Westerville and Columbus could hardly prevent persons who were desiring to go to Mt. Vernon from Westerville from taking some seat belonging to a person who had ridden from Columbus to Westerville and alighted at that point.
 

 However that may be, the letter does not constitute a protest under the Motor Transportation Act, and therefore we must treat this case as one in which the Public Utilities Commission of its own motion suggested further service and authorized an increase in service between Columbus and Westerville without complying with the formalities required by Section 614-91, General Code.
 

 Was this action justified under the statute?
 

 Any route which the Public Utilities Commission is authorized to establish is defined by its line of direction and also by its termini. The route from. Columbus to Westerville passes along exactly the same line as the route from Columbus to Mt. Vernon for a portion of the distance between Columbus and Mt. Vernon. However, the terminus of the shorter route is not at Mt. Vernon, but is at Wes
 
 *639
 
 terville. Now, Horch, Fissell & Davis did not run a bus service between Columbus and Westerville prior to April 28, 1923. They rán a bus service from Columbus to Mt.. Vernon, and it was that right which was preserved to them upon the granting of the certificate given upon affidavit as a matter of right under Section 614-87.
 
 Cincinnati Traction Co.
 
 v.
 
 Public Utilities Commission, post,
 
 668, 150 N. E., 308. The route from Columbus to Westerville is a new route and quite distinct from that from Columbus to Mt. Vernon.
 

 If the applicants had desired a certificate to operate between Columbus and Westerville, under the statute they would have been compelled to make formal application. General Code, Sections 614-90, 614-91, 110 O. L., 216, 217. They would have been compelled to establish public convenience and necessity, because they did not operate between Columbus and Westerville before April 28, 1923. In establishing that public convenience and necessity the question of the adequacy of the traction service and of the local train service from Westerville to Columbus would have been considered.
 
 McLain
 
 v.
 
 Public Utilities Commission,
 
 110 Ohio St., 1, 143 N. E., 381. A hearing would have been had and a definite determination would have been made upon the facts adduced in the evidence with regard to the public convenience and necessity of having a bus line give local service between Columbus and Westerville.
 

 Section 614-91, General Code, in the form in which it was in force at the time when the additional service was established, namely, in 110 O. L.; p. 211, provided that upon application for a route
 
 *640
 
 the applicant should give notice of the filing of such application by publication made once a week for three weeks immediately prior to the day set for the hearing. The Code in fact made no provision, in 110 O. L., and makes none now for the establishment of routes without notice.
 

 However, no notice was given with regard to the establishment of this new route. The Public Utilities Commission of its own motion, without going through the formalities requisite under the statute for the establishment of a new route, simply authorized the bus line to establish local service between Columbus and Westerville. Such action was not authorized under Section 614-91, nor under the regulatory powers of the commission.
 

 The traction company also complained that the affidavits filed for the purpose of securing a certificate of public convenience and necessity as of right showed fraud upon their face.
 

 After a careful consideration of the record we find that this contention is not tenable. In view of the fact that a partnership was entered into upon August 8,1924, the Public Utilities Commission was justified in disregarding the fact that the first application of Horch, Fissell & Davis was made as a partnership. Upon this finding of fact we should not overrule the commission; but upon the more serious question, that a new route was established in a method not authorized by statute, we are compelled to hold that the Public Utilities Commission was in error. We do not pass upon the question of public convenience and necessity and merely hold that the route should have been established upon notice under the provisions of Section 614-91,
 
 *641
 
 General Code, as they were in force at the time in question. The order dismissing the complaint will therefore he reversed.
 

 Order reversed.
 

 Marshat.t,, C. J., Jones, Matthias, Kinkade and Robinson, JJ., concur.