Allen, J.
 

 The question of change in the service permitted to be made by the Ohio Transit Company between Lancaster and Pomeroy is considered in the case of
 
 Central Ohio Transit Co.
 
 v.
 
 Public Utilities Commission, post,
 
 383, 154 N. E., 323, this day decided. The present opinion and judgment relate only to the branch of the service permitted to be operated by the Ohio Transit Company between Columbus and Lancaster.
 

 The Public Utilities Commission authorized the Ohio Transit Company to change its time and tariff schedules, and to add equipment, between Columbus and Lancaster, permitting it to put on new busses and to 'make additional runs between the two cities. The motorbus company applied for this authority under the provisions of Section 614-93, which reads as follows:
 

 “Any motor transportation company as defined
 
 *362
 
 in this chapter may, at any time after a certificate is granted or refused, file a new application or supplement any former application, for the purpose of changing, extending or shortening the route, or increasing or decreasing the number of vehicles, or for the doing of any other act or thing which the applicant might be permitted to do under the general statutory laws and regulations of the state of Ohio.”
 

 The traction company protests against the order upon the ground that the record fails to show a necessity for such increase in service, and claims that upon an application to extend service, add equipment, or change schedules, the applicant is compelled to show that public necessity and convenience require the change. The motorbus company controverts this argument and justifies the order under the general regulatory powers of the commission.
 

 It is true that the statute does not specifically define the circumstances under which the Public Utilities Commission shall permit such extensions in service. Because of this fact, counsel for the commission in effect argue that the Public Utilities Commission is bound by no limitations in permitting such extensions. However, the Public Utilities Commission statute does not contemplate unrestricted competition between motorbus companies. As pointed out in the case of
 
 Cincinnati Traction Co.
 
 v.
 
 Public Utilities
 
 Commission, 113 Ohio St., 688, 150 N. E., 308, the statute emphatically provides for prevention of unrestricted competition, ordering the Public Utilities Commission to refuse
 
 *363
 
 new certificates in cases where existing motor transportation is already adequate, and requiring the Public Utilities Commission to find that the public necessity and convenience demand the service when certificates issue. Also the statute provides that the commission shall issue a certificate to operate in a territory already served by a motor transportation company holding a certificate of public convenience and necessity only when the existing motor transportation company does not provide the service required or the particular kind of equipment necessary to furnish such service. The statute further specifies that before granting any certificate the commission shall consider other existing transportation facilities in the territory for which a certificate is sought, and in case it appears from the evidence that the service furnished by existing transportation facilities is reasonably adequate the commission shall not grant such certificate. Section 614-87, General Code. In other words, the spirit of the Motor Transportation Act is not to permit unrestricted motorbus operation at the whim of an operator, or upon the mere permission of the commission acting at will, but only in accordance with public needs and public service.
 
 McLain
 
 v.
 
 Public Utilities Commission,
 
 110 Ohio St., 1, 143 N. E., 381;
 
 East End Traction Co.
 
 v.
 
 Public Utilities Commission
 
 and
 
 Youngstown Municipal Ry. Co.
 
 v.
 
 Public Utilities Commission, ante,
 
 119, 152 N. E., 20.
 

 We have already held in the case of
 
 Central Ohio Transit Co.
 
 v.
 
 Public Utilities Commission, post,
 
 383, 154 N. E., 323, this day decided, that
 
 *364
 
 under Sections 614-87, 614-91, and 614-93, General Code, when an application is filed with the Public Utilities Commission for the purpose of changing, extending, or shortening the route, or increasing or decreasing the number of vehicles, or for the doing of any other act or thing which the applicant might be permitted to do under the general statutory laws and regulations of the state of Ohio, the application shall be considered by the commission and be governed in the same manner as is provided in case' of an original application. The reason for that holding is discussed at length in the
 
 Central Ohio Transit Co. case,
 
 supra, and it is unnecessary to repeat those reasons here. Suffice it to say that under the provisions of the Code, whether an application to change, extend, or increase service, as in the instant case, be considered an original application or a supplemental application, it is to be considered by the commission and governed in the same manner as is provided in case of an original application.
 

 It would be anomalous to hold that the commission is bound to consider existing service and public convenience and necessity in cases where it issues original certificates, and may permit the service to be extended regardless of such necessity. The absurdity of the proposition becomes evident when we state it in terms of a practical example. If the commission, in order to issue the initial certificate, is required to find that there is a necessity for the operation of two or three busses daily upon a route in which transportation facilities are already established, and, on the other hand, no considera
 
 *365
 
 tion of public convenience and necessity is decisive of an application to extend the service of the two or three busses to the number of forty busses daily upon the same route, the purpose of the law would be completely nullified.
 

 We are unwilling to place so technical a construction upon an enactment whose spirit and intent are so apparent. In view of the provisions of Sections 614-87, 614-91, and 614-93, General Code, and the express purpose of the statute, we think, when a motorbus company applies under the provisions of Section 614-93 to make an extension or increase in service, the Public Utilities Commission in deciding whether the extension shall be granted is bound to consider the question of public necessity and convenience and the question whether the public in the territory proposed to be served already has adequate common carrier transportation service independent of that proposed to be rendered by the applicant.
 

 Proceeding to examine the record with this consideration in mind, we find that it contains no substantial testimony as to the need of additional service from Columbus to Lancaster. Among the numerous witnesses who testified there was one who recalled that upon a single occasion some nine months prior to the time of hearing eight people were unable to take passage upon the bus for Lancaster, seven of whom were carried by an extra motor car. Another witness, without specifying time or place, said vaguely that he knew of occasions when the bus leaving Columbus for Lancaster was crowded. No testimony whatever was given to
 
 *366
 
 the effect that the traction company was not giving service adequate to take care of any overflow from the bus lines, and, as the record shows, the interurban station is only one-half block from the bus station. Many witnesses testified as to the inadequacy of service from Lancaster south through Athens and Pomeroy — a fact which does not affect the traction operating from Columbus to Lancaster. Even the witness who testified as to the single occasion when a bus was unable to handle the passengers between Columbus and Lancaster admits that the interurban cars had hourly service, one-half square from where the eight passengers were standing, with well built depots, and plenty of seats unoccupied. Obviously the necessity for increase in service cannot be properly judged by one isolated instance, particularly when the record shows that the interurban, easily accessible, with frequent trips, was at hand to deal with any emergency crowding.
 

 The Scioto Valley Railway & Power Company also applied for an order requiring the Ohio Transit Company to desist from operating equipment which had never been certificated. The Ohio Transit Company justified this operation upon the ground that some of the cars were placed in operation before the decision of this court in the case of the
 
 Northern Ohio Traction & Light Co.
 
 v.
 
 Public Utilities Commission,
 
 113 Ohio St., 93, 148 N. E., 584.
 

 In this connection the record shows that the president of the Ohio Transit Company upon a hearing testified that they had “on file” with the commission upon April 28, 1923, seven 7-passenger
 
 *367
 
 cars, and that they are now operating and have “on file” two 11-passenger, two 14-passenger, and one 18-passenger car, and that they are operating “double” the equipment which they had on file on April 28, 1923. Mr. Cahill, chief of the bus department, testified that upon April 28, 1923, the Ohio Transit Company had certificated seven 7-passenger Studebaker cars, and that they had since received authority to add one 18-passenger car. In the application of the transit company the president makes affidavit that the company is at the present time using six 11-passenger cars, two 14-passenger cars, and one 18-passenger car; that is to say, only one of the cars being used is one of the cars authorized by the original certificate of public convenience and necessity.
 

 This court decided in the
 
 Northern Ohio Traction & Light Co. case, supra,
 
 and in
 
 Cincinnati Traction Co.
 
 v.
 
 Public Utilities Commission,
 
 112 Ohio St., 699, 148 N. E., 921, that a bus company which has placed in operation additional equipment without making application, under Section 614-93, General Code, is using such equipment unlawfully. It was therefore error upon the part of the commission not to order the transit company to desist from this illegal operation, and in the failure to make such order the commission acted unreasonably and unlawfully.
 

 Since there is adequate common-carrier transportation service between Columbus and Lancaster, independent of the proposed change and increase in service, and since the Public Utilities Commission failed to order the Ohio Transit Company to de
 
 *368
 
 sist from using equipment not authorized, the order of the Public Utilities Commission as to increase of schedules and seating capacity between Columbus and Lancaster must be and hereby is reversed.
 

 Order reversed.
 

 Marshall, C. J., Matthias, Day, Kinkade and Borin son, JJ., concur.