By the Court.
 

 This case comes before this court upon the petition of the Stark Electric Railroad Company, appealing from an order of the Public Utilities Commission of Ohio, rendered the 25th day of June, 1929, upon the application of the Salisbury Transportation Company for an increase of service and equipment in the operation of its bus line be
 
 *551
 
 tween Canton and Alliance, wherein the commission authorized an increase in equipment of two additional busses of 18-passenger capacity for the purpose of rendering such service.
 

 Each commissioner of the Public Utilities Commission filed an opinion in the case, and the facts may be gathered from excerpts from the several opinions.
 

 By Commissioner Geiger:
 

 “The present authorized equipment is one 18-pas-senger bus and time schedule No. 4 permitting hourly unrestricted service, is now effective. Time schedule No. 4 cannot be operated with the one 18-passenger car at present certificated. * * *
 

 “The two companies have their southwest terminus at Canton. Between Canton and Louisville their routes parallel each other. At Louisville the bus route proceeds toward Alliance by route diverging from that of the electric company. The bus route passes through Death Curve, Harrisburg, Five Corners, and from thence into Alliance, having its terminus near the interurban station. From Louisville the interurban route proceeds more directly to Alliance, passing through territory that is not heavily populated and so far distant from the route of the bus company as not to serve the same territory except as to terminal points. Between Canton and Louisville, a distance of seven miles, the interurban company has been furnishing 15 minute service, and between Louisville and Alliance half hour service. Their service continues on this schedule during the busy portions of the' day and a full twenty-four hour service is furnished by the operation of cars on an hourly schedule between Canton and Alliance from 9:30 p. m. until 5:00 a. m.
 

 
 *552
 
 “In addition to this traction and bns service, the Pennsylvania Railroad Company runs eleven passenger trains each way between Alliance and Canton. Not all of these stop at Louisville.
 

 “During a recent period the company has expended from $250,000 to $300,000 in re-equipping its roadway and furnishing new rolling stock so as to more efficiently serve the public. The company is furnishing very cheap transportation through the medium of special tickets and weekly passes. It would appear from the evidence that no complaint can possibly be made as to the operation of this electric line either as to roadbed, equipment, schedule or rates charged. Between Canton and Louisville it is furnishing facilities that are equal or superior to service furnished in many cities. The management has certainly shown commendable activity in attempting to furnish acceptable transportation facilities to the territory which it serves. The company claims that if the commission permits additional competition by granting the application of the bus company that it would be unable to survive and would have to withdraw from the field. The bus company, on the other hand, insists that the people in this territory are entitled to its services and that unless it is granted the schedule and equipment that it now requests it will be unable longer to continue in the transportation field. If the commission is convinced that the operation of the bus line on the schedule applied for will result in the loss to the community of the electric transportation company, it is clearly the duty of the commission to prevent destructive competition. The commission, on the other hand, is desirous of promoting the welfare of
 
 *553
 
 all transportation companies and of preserving their service to the community through which they pass. We are confronted with the question as to whether the electric company can survive a more vigorous competition by the bus company and whether the bus company could give as effective service as that now furnished by the electric company, if the electric company were forced to retire from the field. The records show the following number of revenue passengers carried and the revenue collected for the respective years by the electric line:
 

 Revenue Passengers Carried
 

 ......................... 2,953,657 1924
 

 ......................... 2,772,197 1925
 

 ......................... 2,749,654 1926
 

 ......................... 2,764,953 1927
 

 ......................... 2,892,876 1928
 

 Total Revenue
 

 1924 .........................$390,073.99
 

 1925 ......................... 352,129.16
 

 1926 ......................... 341,805.42
 

 1927 ......................... 320,531.09
 

 1928 ......................... 325,853.90
 

 “Until September, 1927, The Stark Electric Railroad Company sold power from which it derived revenue reflected in the operating statement. During the year 1928 the power service theretofore furnished by the railroad company was furnished to it by a subsidiary company known as The Alliance Power Company. The income and operating statements of the company show a loss of $13,233.97 in 1923; a surplus of $7,163.56 in 1924; a deficit of $9,-640.08 in 1925; a deficit of $70,351.09 in 1926, and a
 
 *554
 
 deficit of $60,183.53 in 1927. In the year 1928 the operation of the railroad shows a deficit of $42,970 and the operation of the power company then furnishing the power a surplus of $40,704, indicating that the deficit of the several years during which the company operated both the railroad and power plant was probably attributable to the operation of the railroad. The manager of the railroad states that there is hope that during the year 1929 the railroad will show a slight profit if it is permitted to operate without destructive competition.
 

 “The report of The Salisbury Transportation Company shows as follows:
 

 *1926 **1927 ***1928
 

 Passengers carried.. 7,500 98,010 94,863
 

 Total revenues......$2,475.23 $22,830.56 $24,770.01
 

 Total expenses...... 9,328.37 90,991.13 71,558.87
 

 Net revenue (deficit) 6,853.14 68,160.57 46,788.86
 

 * Covers period from October 1 to December 31, 1926. Certificate No. 53.
 

 ** Certificates 53 and 277.
 

 * “Covers Certificates 53 and 277 from January 1 to March.
 

 Certificate 277 was abandoned in March, 1928.
 

 “The operation shown for 1926 was for a two months’ period; for 1927 a deficit of $68,160.57 is shown; 1928 shows a decrease in the number of passengers carried from 98,010 to 94,863, and a deficit for the year 1928 of $46,788.86. These figures show that the interurban transports thirty times as many as do the busses and that while there has been in recent years a slight increase each year in the number of passengers carried by the interurban there has been a slight decrease in the number of passengers
 
 *555
 
 carried by the bus company, as shown by the report of 1928 as compared with that of 1927.
 

 “We cannot escape the conclusion that the traction company is now furnishing the large bulk of transportation service between Canton and Alliance and that the records clearly show that the traction company is more convenient and necessary to the public than is the bus company. The records also show that the traction company is gradually emerging from a non-profitable to a profitable operation while the bus company has since its organization met with such heavy losses that it is impossible to predict a successful operation unless it succeeds in capturing so much of the business of the traction company as will make almost certain the destruction of the traction company.
 

 “The majority of the commission is of the opinion that on the facts disclosed by the record there would be no justification in permitting the bus company to operate a schedule that must seriously jeopardize the continued existence of the traction company while not insuring a stable operation of the bus company. The people in this territory have remarkably good service and while it might be convenient for many to be permitted to have more frequent bus service, yet that the inevitable result would be to destroy the traction company, or at least to render its operation unprofitable. If the traction company were compelled to retire from the field it is almost certain that the bus company could not furnish satisfactory, transportation to the great number of people who now enjoy the service of the traction company. It is proper also to consider that the traction company furnishes freight fácil
 
 *556
 
 ities which could not be furnished by the bus company under any circumstances. We are of the opinion that the bus company has not shown such a demand as would justify the commission in granting the schedule or equipment applied for.
 

 “As to that portion of the applicant’s route lying between the northeastern corporate limits of the village of Louisville and the southwestern corporate limits of the city of Alliance, we find that the same cannot be adequately served by the traction company and that such service is best furnished by the bus company. In order to permit the lawful operation of schedule No. 4 it will be necessary to allow an increase in the applicant’s certificated equipment. Hence, the applicant will be permitted to add two 18-passenger busses to its present certificated equipment. This would give it three certificated 18-pas-senger busses which will, in the opinion of the commission, suffice to maintain its schedule.
 

 “We therefore conclude as follows: (a) That the applicant be allowed to increase its certificated equipment by adding two 18-passenger busses instead of three, as requested in the application, (b) That the applicant be ordered to operate under its schedule No. 4 on file with the commission, same being issued on January 19, 1928, and effective March 21,1928, which schedule provides for seventeen west bound and sixteen east bound trips daily between Canton and Alliance and that the schedule herein sought be denied.
 

 “This will allow hourly, unrestricted service each way, during most of the day. Were it not for the fact that the commission has allowed schedule No. 4, providing for hourly, unrestricted service between
 
 *557
 
 termini, and that this schedule has been operated since March 21,1928, (although by the use of uncertificated equipment), and the people have thus become accustomed to an hourly unrestricted service, such hourly service would not now be permitted.
 

 “Commissioner Klinger dissents from the finding and order.”
 

 By Commissioner Klinger:
 

 “The applicant, The Salisbury Transportation Company, is seeking to inaugurate one-half hour, unrestricted service between Canton and Alliance and Alliance and Canton, and also to increase its present certificated equipment of one 18-passenger bus to four 18-passenger motor vehicles. At the present time the applicant should be operating upon a two-hour schedule under an order of the Supreme Court and the Public Utilities Commission, operating one 18-passenger bus thereon. # *
 

 “The applicant at the present time is authorized to operate one 18-passenger bus. (See the records of this commission and orders under date of March 21, 1928, and supplemental order of June 1, 1928.) * * *
 

 “At this time it might be well to give a little of the history of matters pertinent to the issue herein involved: Sadie Salisbury, the original holder of Certificate of Public Convenience and Necessity No. 53, being the certificate herein involved, was granted the same by affidavit, under the provision of Section 614-87 of the General Code of Ohio. Under this certificate she was given authority to operate one 18-passenger motor propelled vehicle. Some time thereafter The Salisbury Transportation Company acquired this certificate and has ever since that time
 
 *558
 
 owned and operated the same. This applicant made a similar application some two years ago and the commission under its finding and order of the twelfth of April, 1927, granted in part the prayer of said application and rejected a part. Thereafter a supplemental order was issued which has been herein referred to.
 

 “Since the former application one Joseph F. Eberhard and Albert B. Schneider, former certificate holders, have ceased operation under said certificates and the same have now been abandoned. Applicant in its reply brief sets forth that it was the purchaser of one of these certificates which was shortly thereafter abandoned and the same was purchased for the purpose and with the intention of thereby obtaining through service from Canton to Alliance with a change of bus at Louisville. This proving impractical the applicant later abandoned the latter certificate and the other certificate holder has also since abandoned his service. This leaves the applicant company and the protestant company alone in the field serving the territory in question with transportation, supplemented with the service of the Pennsylvania Railroad Company, which runs eleven passenger trains each way daily between Alliance and Canton.
 

 “This community has unequaled transportation service and it appears to me that every need and convenience is adequately served and if the policy as laid down by the Supreme Court of Ohio in the case of
 
 Scioto Valley Railroad & Power Co.
 
 v.
 
 Public Utilities Commission,
 
 115 Ohio St., 358, 154 N. E., 320, and
 
 Stark Electric Railroad Co.
 
 v.
 
 Public Utilities Commission of Ohio,
 
 118 Ohio St., 405, 161 N.
 
 *559
 
 E., 208, is followed, no additional service should be granted or allowed.
 

 “It is hard to conceive why such a persistent demand exists if the sole purpose is the public need or convenience. According to the records on file with this commission The Salisbury Transportaion Company in 1926 had a net revenue deficit of $6,853.14, and in 1927, $68,160.57, and in 1928, $46,788.86, and it is hard to understand why they persist in increasing their operating expenses in the face of these heavy annual losses. It is hard for me to understand how they are able to escape receivership. In fact, they cannot sustain these losses unless there is an interested person or institution that has other motives than the public convenience and necessity. It is quite plain to me that some one wants to wreck the Stark Electric Company, and The Salisbury Transportation Company is the willing instrument through which this design is being carried into execution. It is quite plain from the evidence that the traction company is now furnishing the large bulk of transportation service between Canton and Alliance and that the traction company is of greater convenience and necessity to the public than the bus company. I believe the evidence shows that there is adequate transportation facility and service between Canton and Louisville and Louisville and Canton, and, further, that there is adequate service between Louisville and Alliance, and Alliance and Louisville, and Alliance and Canton, and also between Canton and Alliance, and, therefore, that portion of the application should be denied.”
 

 Commissioner McCulloch was. of opinion that the public convenience and necessity was shown to exist
 
 *560
 
 for hourly unrestricted bus service and for an increase of two additional busses.
 

 “Ordered (by Commissioners Geiger and McCulloch) That said Certificate of Public Convenience and Necessity No. 53, now held by The Salisbury Transportation Company, be, and hereby the same is modified and amended to authorize said The Salisbury Transportation Company to maintain thereunder the schedule of operations provided in Time Schedule No. 4, issued January 19, 1928, effective March 21, 1928, which provides for seventeen westbound and sixteen eastbound, unrestricted trips, daily, betwen Canton and Alliance, Ohio. It is further
 

 “Ordered, That the application of said The Salisbury Transportation Company to add to the certificated equipment provided for operations under said Certificate of Public Convenience and Necessity No. 53, four motor propelled vehicles with a seating capacity for eighteen passengers each, be, and hereby it is denied. It is further
 

 ‘ ‘ Ordered, That Certificate of Public Convenience and Necessity No. 53, now held by the Salisbury Transportation Company, be, and hereby the same is modified and amended to provide that the motor propelled vehicle equipment, thereunder to be operated shall be increased from one to three vehicles with a seating capacity of eighteen passengers each, and that, within five days therefrom said The Salisbury Transportation Company file with this commission a statement of the equipment added under authority of this order, setting forth for each car, the state license number, the year and trade name of the vehicle, the engine number and other identification data, and before the placing in service of said equipment, pay to the treasurer of state the taxes
 
 *561
 
 prescribed, and file with this commission the insurance policies required by law; all to become effective as of June 25,1929. * * *
 

 “Dated at Columbus, Ohio, this twenty-fifth day of June, 1929.
 

 “Commissioner Klinger dissents in the finding and conclusions of the majority of the commission.”
 

 It thus appears that the majority of the commission were of the opinion that public necessity and convenience did not require the granting of the application for the additional equipment, and that one of the two commissioners issuing the order concurred therein for the sole reason that the Salisbury Transportation Company had been operating, although unlawfully, three unrestricted busses since March 21, 1928, “and the people have thus become accustomed to an hourly unrestricted service,” and expressly stated that but for that fact such service would not be permitted.
 

 The commission is not authorized to grant a certificate for increased equipment for any reason other than public necessity and convenience; and the fact that the public has become accustomed to such service, in the face of the expressed conclusion of the majority of the commission that there is no public necessity or convenience therefor, affords no reason nor justification for the granting of such certificate.
 
 Scioto Valley Ry. & Power Co.
 
 v.
 
 Public Utilities Commission of Ohio,
 
 115 Ohio St., 358, 154 N. E., 320.
 

 The order granting a certificate for increased equipment will be reversed.
 

 Order reversed.
 

 Marshall, C. J., Kinkade, Robinson, Jones, Matthias and Allen, JJ., concur.