## PULITZER PUB. CO. v. FEDERAL COMMUNICATIONS COMMISSION et al.

### No. 6866.

United States Court of Appeals of the District of Columbia.

Argued Oct. 19, 1937.

Decided Dec. 6, 1937.

Paul M. Segal, George S. Smith, and Harry P. Warner, all of Washington, D. C., for appellant.

Hampson Gary, Gen. Counsel, Federal Communications Commission, George B. Porter, Asst. Gen. Counsel, and Fanney Neyman, Principal Atty., all of Washington, D. C., for appellee Federal Communications Commission.

Paul D. P. Spearman and Alan B. David, both of Washington, D. C., for appellee Star-Times Publishing Co.

Before ROBB, GRONER, and MILLER, JJ., and WHEAT, District Judge.

GRONER, J.

This is an appeal under sections 402(b)(1) and 402(b)(2) of the Communications Act of 1934, 47 U.S.C.A. § 402(b)(1, (2), [1] from an order of the Federal Communications Commission dated September 22, 1936, effective October 6, 1936. The order grants a construction permit to the Star-Times Publishing Company, St. Louis, Mo., for a new radio broadcasting station to operate at 1250 kc. with 1 kilowatt power unlimited time. The appellant, Pulitzer Publishing Company, licensee of Station KSD, operates in St. Louis on the 550 kc. channel with a power of 5 kilowatts day, 1 kilowatt night, sharing time with Evangelical Lutheran Synod of Missouri, etc., licensee of KFUO, operating on the same frequency with 1 kilowatt power until sunset, 500 watts at night. KFUO operates 26½ hours per week, KSD the remainder of the time.

We are told in appellant's brief that the ground of the appeal is that the effect of granting a license for a station to intervener Star-Times will be to throw that station into competition with appellant's station and that the commission should have found that the broadcasting facilities within the St. Louis area were already ample and sufficient and should have confined any further grant of facilities to those already operating there. We shall hereafter speak of appellant as Pulitzer and of intervener as Star-Times.

Pulitzer is the owner of the St. Louis Post-Dispatch, a daily newspaper in St. Louis, Mo. It has owned the license for station KSD since March 9, 1922. It shares time with the Lutheran station KFUO to the extent above mentioned. In August, 1934, it filed an application with the commission for the exclusive use of its 550 kc. channel, and the Lutheran station at the same time requested a change in its frequency assignment to the 640 kc. channel. In May, 1936, the commission denied the Lutheran application. While the two applications were pending before the commission, Pulitzer twice amended its application. In February, 1936, the commission assigned for hearing in September, 1936, Pulitzer's application for exclusive use of the 550 kc. channel. The case was finally heard in May, 1937, and oral argument was set for November 18, 1937. The application is, therefore, pending and undecided.

In November, 1935, Star-Times filed an application for a construction permit requesting authority to erect a station in St. Louis and to be assigned the use of frequency 1250 kc. with power output of 1

---

[1] 402 (b) "An appeal may be taken, in the manner hereinafter provided, from decisions of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:

"(1) By any applicant for a construction permit for a radio station, or for a radio station license, or for renewal of an existing radio station license, or for modification of an existing radio station license, whose application is refused by the Commission.

"(2) By any other person aggrieved or whose interests are adversely affected by any decision of the Commission granting or refusing any such application."

kilowatt day and night unlimited, and in December, 1935, Missouri Broadcasting Corporation, the owner of Station WIL, filed an application for construction permit to erect new equipment and change its frequency from 1200 kc. to 1250 kc., increase its power, etc. The commission set down for hearing the Star-Times and Missouri Broadcasting applications and served notice of the same on Pulitzer, and the latter was permitted to intervene and participate in the hearing. The examiner reported in June, 1936, recommending the denial of both applications. Exceptions were filed by both, and the commission heard the matter September 10, 1936. The commission refused the Missouri Broadcasting Corporation application and granted the application of Star-Times. Pulitzer, intervener in that controversy, appealed.

■ The commission and Star-Times, as intervener on this appeal, move to dismiss on the ground that Pulitzer is not a person aggrieved or whose interests are adversely affected by the decision of the commission granting the application of Star-Times. The commission adds to this that Pulitzer is without right to appeal because its application for increased facilities is still pending and, therefore, has not within the language of 402(b)(1) been "refused." We agree with the commission in this respect and shall confine ourselves to the question whether Pulitzer is entitled to maintain this appeal as a person aggrieved under 402(b)(2) of the act.

First. Pulitzer's main point is that the license to Star-Times is invalid because the commission was without authority to act upon its application until the commission had passed upon and granted Pulitzer's application for increased hours of operation. Its theory in this respect is that the established station is entitled to priority of consideration over an application for the establishing of a new station. The ground of this contention is the claim that a broadcasting licensee is a public utility, and from this ground Pulitzer argues that a new utility ought not to be allowed to enter the field until an old established utility is given an opportunity to extend its service. In other words, that a new license should not be granted until it is determined whether the utility already in the field can meet the full requirements of public convenience and necessity. Egyptian Transp. System, Inc., v. Louisville & N. R. R. Co., 321 Ill. 580, 152 N.E. 510; Scioto V. Ry. & Power Co. v. Public Utilities Commission of Ohio, 115 Ohio St. 358, 154 N.E. 320.

■ But we have never said that a radio broadcasting station is a public utility in the sense in which a railroad is a public utility. Generally speaking, that term comprehends any facility employed in rendering quasi public service such as waterworks, gas works, railroads, telephones, telegraphs, etc. The use and enjoyment of such facilities the public has the legal right to demand; but its right to the use and enjoyment of the facilities of a privately owned radio station is of a much more limited character. We have often said that radio communication as contemplated by the act constitutes interstate commerce and involves the public interest and that in this aspect Congress could exercise its power to regulate it. We have said also that the regulatory provisions of the act are a reasonable exercise by Congress of its powers and that one who applies for and obtains a license receives it subject to the right of the government in the public interest to withdraw it without compensation. Trinity Methodist Church, South, v. Federal Radio Commission, 61 App.D.C. 311, 62 F.2d 850. But the power of Congress has not yet been extended to the point of fixing and regulating the rates to be charged by the licensee or the establishment of rules requiring it to serve alike the entire public in the use of its facilities. Nor has Congress assumed the right to limit the profits on the basis of its investment or otherwise. The licensee of a radio station chooses its own advertisers and its own program, and generally speaking the only requirement for the renewal of its license is that it has not failed to function and will not fail to function in the public interest.

■ As long as this continues to be the policy of Congress, the term—public convenience, interest, or necessity—should not be given such a broad meaning as is applied to it elsewhere in public utility legislation. And so we hold that the commission as a matter of positive duty is not required to give the owner of an existing station priority to enlarge or extend its facilities because alone of the primacy of its grant. Instead the test should be, as was said by the Chief Justice in Federal Radio Commission v. Nelson Bros. Co., 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406, the character and quality of service—having due regard in the distribution on this basis to the equities of existing stations. And to this we may add that the requirement goes

252

no farther than we stated today in Great Western Broadcasting Association, Inc., v. Federal Commission, 68 App.D.C. 119, 94 F.2d 244, namely, that where the effect of granting an application for a new license will be to destroy the ability of the holder of the old license to carry on in the public interest the application should be denied. But that is not this case. Indeed, as we have pointed out, Pulitzer's application is still pending and nothing the commission has done with regard to Star-Times can or ought to prejudice any rights it has—in the public interest—to the unrestricted use of its present frequency.

What we have said, we think, is sufficient to dispose of Pulitzer's point that an established station, without more, must be preferred to a new applicant.

■■■ Second. Pulitzer's other grounds are more general and may be summarized as directed to the points (a) that the city of St. Louis was already adequately supplied with radio broadcasting facilities, (b) that the effect of granting Star-Times application will be to create interference between it and other stations elsewhere on the same frequency, and (c) that the commission should in any case have combined all the applications, including Pulitzer's, in a joint hearing and as a part of a single problem. As to these contentions, it may properly be observed that they all relate to matters as to which the public is concerned. It is not claimed, for instance, that the establishment of the new station will affect Pulitzer's financial and economic interests or result in interference between its station and any other station. In view of this, it would be enough to say that Pulitzer is not "adversely affected" as the result of anything done by the commission under (a) and (b) above and hence is not in position to appeal from the commission's rulings in these respects. Great Western Broadcasting Association, Inc., v. Commission, supra. But in this case we need not place our rejection of the contentions on that ground, for the commission has found that St. Louis and the area adjacent to it, with a population in excess of a million and with large industrial and commercial enterprises and an abundance of what is called in radio parlance "talent," will not be overserved by the granting of Star-Times' application, and has also found that there will be no interference between Star-Times and other stations elsewhere using the same frequency. The evidence abundantly sustains these findings. As to contention (c) above, a sufficient answer is that the commission has, pursuant to Congressional authorization, promulgated rules and regulations to assure the orderly disposition of its business and that in the enforcement of these procedural rules certain latitude of discretion must be permitted. Quite properly the commission has provided by rule that it will, so far as practicable, endeavor to fix the same date for hearing all related matters affecting the same applicant or the same area; but the record shows that after the present case had been designated for hearing Pulitzer amended its amended application, and so we do not feel, in view of this circumstance, and also in view of the fact that it is not shown that the refusal to postpone the present hearing has prejudiced Pulitzer, that we should characterize the commission's action in this respect as an abuse of discretion.

For the reasons we have stated, the order of the commission should be, and is, affirmed.

Affirmed.