

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann
~~XXXXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Railroad Commission of Texas
Gentlemen:

Opinion No. O-3611
Re: Validity of "grand-father"
provision in H. B. 351, 47th
Leg., and construction to be
placed thereon.

In your letter of recent date you direct atten-
tion to House Bill No. 351, Forty-seventh Legislature,
and advise us of the following facts:

". . . heretofore the Railroad Commission
of Texas in the issuance of special commodity permits
has not only not required pleadings and proof that
the public convenience and necessity required the
operations contemplated by said permits but has not
permitted such pleadings and proof; and said permits--
some 1200 in number--are now outstanding without there
ever having been any pleadings or proof that the
public convenience and necessity required the
operations or that the existing facilities were
inadequate. Moreover, many of these permits give
the holders thereof authority to transport all of the
commodities named in the special commodity statute
but in a great number of cases the holders have
transported only a portion of the named commodities."

The Act referred to provides for the issuance
of "specialized motor carrier" certificates f or authority
to conduct certain motor carrier operations. Special com-
modity carriers, as they have been heretofore called, hold-
ing permits issued under Section 6(d) of Article 911b,
Vernon's Annotated Civil Statutes, would be replaced by
carriers holding specialized motor carrier certificates.
The new statute contains the following provision:

"1(b). . . . provided further that any person
to whom a "Special Commodity" permit for the
transportation of any or all of said commod-
ities had been issued under the provisions of
Section 6, paragraph (d), Article 911b, Title

25, Revised Civil Statutes of the State of Texas, 1925, as amended, if such "Special Commodity" permit shall have been in force and effect on January 1, 1941, and if such person or predcessor in interest may desire to continue in the business of a motor carrier of such commodity or commodities shall file an application for a certificate of conveneince and necessity under the terms of this Act within sixty (60) days after the effective date hereof, it shall be the duty of the Commission to issue without further proof a certificate authorizing the operation as a "Specialized Motor Carrier" for the transportation of such commodity or commodities covered by the "Special Commodity" permit held by the applicant, which "Specialized Motor Carrier" certificate shall be issued to the applicant and include all the rights and privileges granted under said "Special Commodity" permit."

You request our opinion in response to twenty-one questions, reading as follows:

### "First

"In view of such decisions as
Cincinnati Traction Company vs. P.U.C. of Ohio, 150 N. E. 308,
Golden Gate Ferry Company vs Railroad Commission of California, 268 Pacific 355,
State ex rel Henson vs. Brown, 31 S. W. (2) 208 (Mo.),
In re Stanley, 174 Atlantic 93 (Maine), and
Gruber vs Commonwealth, 125 S.E. 427 (Virginia)

is House Bill 351, wherein it directs, if it does direct, this Commission, without notice or hearing, to issue grandfather certificates of public convenience and necessity to holders of preexisting special commodity permits 'in force and effect on January 1, 1941', valid and constitutional insofar as such grandfather certificates might be granted with respect to commodities named in the preexisting special commodity permits but which commodities were not being actually transported on January 1, 1941, and prior thereto?

### Second

"Or is said House Bill 351 valid and constitutional only when administered and applied in such fashion as to bring about an issuance by this Commission of grandfather certificates to the holders of preexisting special commodity permits with respect ONLY to named commodities which such holders were actually transporting for hire on January 1, 1941?

### Second-A

"Is it mandatory upon this Commission to hold hearings upon each of the grandfather applications contemplated by H. B. 351 for the purpose

"(a) of determining whether each special commodity permit was 'in force and effect on January 1, 1941' as to each commodity named therein or should the Commission, from a mere study of its own records issue a grandfather certificate to each applying special commodity permittee, where the Commission's records show such an outstanding permit,--writing the grandfather certificate in such fashion as to give the holder thereof authority to transport the very same commodities named in the special commodity permit whether such special commodity permittee was actually transporting all of said commodities on January 1, 1941, or not?

"(b) Or is it mandatory upon this Commission to set for hearing each of said grandfather applications and on the basis of such hearing issue to such applicant a grandfather certificate limited, not to all of the commodities named in his preexisting special commodity permit, but only to the commodities named in said permit and which were being actually transported by the permittee on January 1, 1941, and prior thereto,-- this, on the theory that such preexisting permit was not in force and effect on January 1, 1941, as to named commodities not being actually transported on that date and prior thereto?

### Third

"In view of the fact that House Bill 351 is an amendment to the existing Motor Carrier Law of Texas, should this Commission, in the application and adminis-

tration of the Motor Carrier Law as amended by House
Bill 35., take the position that said House Bill 351,
insofar as it authorized the grant of grandfather
certificates covering a commodities named in the pre-
existing special commodity permits but which were not
being actually transported for hire on January 1, 1941,
and prior thereto, is unconstitutional as thus
construed; and, for that reason, in view of the rule
that the Commission should go in the direction of
constitutionality, if possible, set for hearing all
applications for grandfather certificates and grant
such certificates only if and when there shall be
pleadings and proof of just which commodities named
in the preexisting special commodity permits were
being actually transported on January 1, 1941, and
then, upon such pleadings and proof, reduce the grant
of rights in such grandfather certificates down to the
right to transport only those commodities shown to have
been actually transported on January 1, 1941, and
prior thereto,--taking the position that such pre-
existing special commodity permits were 'in force and
effect on January 1, 1941' only with respect to those
commodities named therein which were actually being
transported on January 1, 1941, and prior thereto,
and that there had been an abandonment by the holders
of said special commodity permits of the right to
transport commodities named in their special commodity
permits but which were not being actually transported
on January 1, 1941, and prior thereto?

### Fourth

"Assuming that there are a large number of
outstanding special commodity permits which,
on their face, give the right to transport all
or nearly all of the commodities named in the special
commodity statute but under which there was a failure
actually to transport  some of such commodities on
January 1, 1941, and prior thereto, has the right to
transport said commodities not so actually transported
been abandoned in such fashion as not to have been 'in
force and effect on January 1, 1941,' insofar as
commodities not actually transported on that date and
prior thereto are concerned, notwithstanding the fact
that the Commission never, at any time, took any
statutory steps to cancel for abandonment said permits
after notice and hearing insofar as the commodities
not so actually transported are concerned.

### Fifth

"Assuming that we should reduce the grand-

father rights down to the right to transport
commodities actually transported on January 1,
1941, and prior thereto, then and in that event,
in view of the wording of House Bill 351, does
this Commission have the power to give notices
and hold hearings and make findings; and, there-
on, issue grandfather certificates covering only
commodities actually transported on January 1, 1941,
and prior thereto,--conducting such hearings and
giving such notices making such findings under the
Motor Carrier Law of Texas as it stands as amended by
House Bill 351 or doing so independently of House
Bill 351?

### Sixth

"Assuming that House Bill 351 is unconsti-
tutional as to commoditites not actually being
transported on January 1, 1941, and prior thereto,
even when considered in connection with the pre-
existing provisions of the Motor Carrier Act, does
the Railroad Commission of Texas, under its rule-
making power, have authority, independently of the
unconstitutional protions of House Bill 351, to
adopt a plan by general order or rule of hearing the
special commodity permittees and allowing them to
prove the public convenience and necessity and
inadequacy of existing facilities and, upon such
pleadings and proof, grant to them grandfather
certificates giving the authority to transport for
hire such commodities as the public convenience and
necessity requires to be transported and with respect
to which the existing transportation facilities are
inadequate?

### Seventh

"Assuming that House Bill 351 is invalid as
to commodities not actually transported on January 1,
1941, and prior thereto, and assuming that we have
no power to validate outstanding special commodity
permits in the method indicated by the preceding
question, then and in that event

(a) is the remainder of House Bill 351 valid?

(b) If valid, does the Railroad Commission of Texas
have any alternative other than to require the holders
of outstanding special commodity permits to come in

under such valid portions and prove the public
convenience and necessity and the inadequacy of
existing facilities just as though they had never
held any special commodity permits?

(c)  If said remainder of House Bill 351
is invalid, is it mandatory upon the Railroad
Commission of Texas to cancel out all outstanding
special commodity permits?

### Eighth

May a certificate of public convenience and
necessity or a contract carrier permit or a
special commodity permit be abandoned, in whole
or inpart, with no operations thereunder, and still
remain 'in force and effect' even where the
Railroad Commission of Texas fails, after notice and
hearing, to cancel the same on the grounds of aban-
donment of service under the cancellation provisions
of the Motor Carrier Act?

### Ninth

"In detail, just what steps should this
Commission take under House Bill 351 in order to
carry out and administer said bill in accordance
with its intent and purpose?

"The passage of House Bill 351 was passed as
a result of the decision of the Austin Court of
Civil Appeals in The T and P Railway Co. vs.
Railroad Commission of Texas(and Thomas G. Hunter).

### Tenth

"If the Supreme Court of Texas upholds the
Austin Court of Civil Appeals in the Hunter Case,
(a) will all of such special commodity permittees
be in exactly the same position they were in prior
to the passage of House Bill 351 if said grandfather
clause of said Bill is invalid, (b) or, if not in
said same position, how shall they proceed and how
shall this Commission proceed to cure the vices and
defects pointed out in said Hunter case?

### Eleventh

"In connection with those questions listed above
having to do with the words 'in force and effect':

were any of our some 1200 special commodity permits
in force and effect in view of the decision in the
Hunter case?

### Twelfth

Your attention is called to the words of House
Bill 351 reading: 'if such person or predecessor in
interest may desire to continue in the business of
a motor carrier of such commodity or commodities',
and, in connection therewith, we ask this question:

"How shall the Commission proceed to determine
what business any holder of a preexisting special
commodity permit was engaged in at any given time
and how shall the Commission proceed to authorize
him to continue in such business?

### Thirteenth

"Some special commodity permittees not only
do not exercise all of the rights shown on the face
of their permits, so far as commodities are concerned,
but they also do not exercise all of their named
rights, SO FAR AS AREA IS CONCERNED, and we now re-
quest you to give us your opinion with respect to
AREA in all instances indicated above where we have
asked your opinion with respect to COMMODITIES?

### Fourteenth

"The grandfather clause seems to authorize the
Commission to issue a certificate to a holder of a
special commodity permit authorizing such holder 'to
continue in the business of a motor carrier of such
commodities' as he was engaged in on January 1, 1941.
In order for the Commission to issue such certificate
to carrier so that he can continue in the business of
a motor carrier as he was engaged in on January 1,
1941, how is the Commission to determine what business
the carrier was engaged in, both with respect to
commodities and area, on such date; and what procedure
should be followed to ascertain the extent of the
authority that should be embraced in the certificate
issued and enable such carrier to continue in such
business?

### Fifteenth

"In determining whether each special commodity

permit was 'in force and effect on January 1, 1941' would the fact that a particular permit was under suspension on January 1, 1941, or since that date, disqualify said applicant for a certificate of convenience and necessity under the so called 'grandfather' clause of said Act?

"In connection with the above and foregoing question, your attention is directed to the fact, and the same is now stated to you as a fact, that from time to time holders of special commodity permits apply to this Commission for authority to suspend service for a certain period of time under their particular permit. The length of time of suspension varies, but it is usually for a period of six months. These suspensions are granted by the Commission without hearing and all that is done by the Commission is to enter an order approving the suspension for a specific period of time.

### Sixteenth

"If, and in the event, your answer to the above and foregoing question is in the negative, then please advise us in connection with the following:

"(a) Would the holder of the special commodity permit, which was under suspension, be required to reinstate said permit by filing proper insurance and fees before the Commission could consider, or issue, to the applicant a certificate under the so called 'grandfather' clause of said act?

(b) Would such acts have to be done before the applicant could legally file a 'grandfather' application?

"(c) In the event that a particular special commodity permit was under suspension, by order authorizing same, and said order, for example, authorized the permit to remain in suspension until September 1, 1941, would said permit holder be required to reinstate said permit before this Commission could consider, or grant to him a certificate under the so called 'grandfather' clause of said act?

"(d) Or would the permit holder be allowed, and authorized under said Act, to obtain a certificate under the 'grandfather' clause of the Act, and said grandfather certificate then remain under suspension until September 1, 1941?

### Seventeenth

"Is determining whether or not a special commodity permit is in 'force and effect on January 1, 1941, ' as to both commodities and territory, is this Commission to take into consideration any amendment that may have been granted to the permit subsequent to January 1, 1941, and prior to the effective date on the act, or shall we only consider the permit as being in 'force and effect' as to those commodities, and the territory covered and named, in the permit as of January 1, 1941? In other words would the grandfather certificate, as a maximum, cover only such commodities, and territory as was authorized in the permit as of January 1, 1941, or should we consider any amendment granted to the permit subsequent to January 1, 1941, and prior to the effective date of the act?

### Eighteenth

"By the express terms of the Act a person is prohibited from holding both a common carrier certificate and a specialized motor carrier certificate. In your opinion, having special reference to your prior opinions on the subject, and the present Motor Carrier Law, may one and the same person hold both a contract carriers permit and a specialized motor carrier certificate?

"In connection with the above and foregoing question it is now stated to you as a fact that there are a number of operators within the state that hold both a special commodity permit and contract carriers permit.

### Nineteenth

"House Bill 351 provides for a filing fee of $25.00, and specificially states that this Commission shall not consider, etc., any application unless it is accompanied by a filing fee of $25.00. But in this connection your attention is directed to the following facts; We now have on hand a number of special commodity permit applications which have (1) either been heard and not yet acted upon, (2) or not set for hearing, but on file, (3) or set for hearing but not yet heard or acted on. Each of these applications were accompanied by a filing fee of $10.00 as required by the

present law. With these facts in mind please advise us in connection with the following:

"(a) Are we authorized to apply the $10.00 filing fee which has been paid on those special commodity applications which have been filed, and heard, but not acted upon, on the $25.00 filing fee required under House Bill 351 for all applications for certificates to operate as a specialized motor carrier?

"(b) Are we authorized to apply the $10.00 filing fee which has been paid on those special commodity applications which have been filed, and set for hearing, but not yet heard or acted upon, on the $25.00 filing fee required under House Bill 351?

"(c) Are we authorized to apply the $10.00 filing fee which has been paid on those special commodity applications which have been filed, but neither set for hearing, nor heard, nor acted upon, on the $25.00 filing fee required under House Bill 351?

## Twentieth

"Assuming that an applicant is not eligible for a specialized motor carrier certificate under the so called 'grandfather' clause of House Bill 351, and he, therefore, files his application and seeks to prove public convenience and necessity, – in proving, or attempting to prove that present and existing service is inadequate, will such applicant have to take into consideration and prove that all services (including regular route common carriers) are inadequate, or will he only have to prove that the present service of existing specialized motor carriers is inadequate?"

We think it well, first to consider the status of the special commodity permits granted by the Railroad Commission and outstanding on January 1, 1941, and which had been issued without the hearing of any evidence on the question of public convenience and necessity. In the case of Texas & Pacific Ry. Co. v. Railroad Commission, 138 S.W. (2d) 927, the Austin Court of Civil Appeals set aside a special commodity permit, holding that public necessity had to be alleged, proven and found, as in the case of common carriers. In effect, the Court of Civil Appeals said that

if the statute should be construed so as to permit the granting of such permits without such allegation, proof and finding, it would be discriminatory and unconstitutional. This department, disagreeing with the opinion of the Court of Civil Appeals, filed an application for writ of error to the Supreme Court. The writ was granted and the case was submitted on briefs and oral argument several weeks ago, but the Supreme Court has not yet announced its decision in the case. The Supreme Court has requested counsel for the parties in the T. & P. case to submit to the Court their views concerning the possible effect of this H. B. 351 upon the permit involved in that case. We think the Commission should accept and file all applications to convert special commodity permits into specialized motor carrier certificates, but that such applications should not be heard and determined until the Supreme Court disposes of the T. & P. case. If there is unexpected delay in the disposition of that case and the need to determine these applications becomes pressing we shall then be glad to give you our opinion as to the proper course to pursue.

In the light of what we have said above, we beg not to answer at this time your questions Nos. 1, 2, 2a, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 and the questions contained in your letter of June 20, 1941.

In Section 5a(c) the Commission is prohibited from hearing or determining any application for a specialized motor carrier certificate (except the grandfather), unless the application shall contain certain allegations, among them being:

"'3. It shall be accompanied by a map, showing the territory within which, or the points to or from or between which, the applicant desires to operate, and shall contain a list of any existing transportation company or companies serving such territory, and shall point out the inadequacy of existing transportation facilities or service, and shall specify wherein additional facilities or service are required and would be secured by the granting of said application.

"'(d) . . . The Commission shall have no authority to grant any application for a certificate of convenience and necessity authorizing operation as a "Specialized Motor Carrier" or any other common carrier unless it is established by substantial evidence (1) that the services and facilities of the existing carriers serving the territory or any part

thereof are inadequate; (2) that there exists a public necessity f or such service, and (3) the public convenience will be promoted by granting said application. The order of the Commission granting said application and the certificate issued thereunder shall be void unless the Commission shall set forth in its order full and complete findings of fact pointing out in detail the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service. Likewise, the Commission shall have no authority to grant any contract carrier application for the transportation of any commodities in any territory or between any points where the existing carriers are rendering, or are capable of rendering, a reasonably adequate service in the transportation of such commodities.

"'(e) Except where otherwise provided, applications for and holders of certificates of public convenience and necessity, as provided for in this Section, shall be subject to all of the provisions of the Act relating to common carriers by motor vehicle."

Based on the above, we answer your twentieth question by saying that in our opinion the character of services being rendered by existing common carriers as well as specialized carriers must be considered. If viewing all the existing services of the different carriers, there is no need for the operation applied for then the application should be denied. On the other hand, if all the existing facilities fail to properly serve the territory as to the commodities sought to be transported then the certificate may be granted.

Special commodity applications now pending, as we understand, do not contain allegations meeting the quoted requirements of an application under this Act. Hence, new applications or amended applications satisfying such requirements will have to be filed before the specialized certificate may issue. Section 5a(f), H. B. 351, requires every application under such Section to be accompanied by a filing fee of $25.00. It is our opinion that $10.00 fees deposited with the pending special commodity carrier applications may be allowed as a credit on such $25.00 filing fee and we answer each

Railroad Commission of Texas, Page 13, O-3611

subdivision of your nineteenth question in the
affirmative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

APPROVED JULY 1, 1941                    Glenn R. Lewis
                                              Assistant
s/ Grover Sellers

FIRST ASSISTANT
ATTORNEY GENERAL

GRL:LM/cg

APPROVED OPINION COMMITTEE
By BWB, Chairman