**Dominic Peter GAGLIARDO, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 20458.**

United States Court of Appeals
Ninth Circuit.

Aug. 31, 1966.

Harry E. Claiborne, Las Vegas, Nev., for appellant.

Joseph L. Ward, U. S. Atty., Robert S. Linnell, Asst. U. S. Atty., Michael De Feo, Asst. U. S. Atty., Las Vegas, Nev., for appellee.

Before HAMLIN, KOELSCH and BROWNING, Circuit Judges.

HAMLIN, Circuit Judge:

Dominic Gagliardo, appellant herein, was charged by indictment in the United States District Court for the District of Nevada with a violation of 18 U.S.C. § 1464. After a jury trial he was convicted and sentenced under the Young Adult Offenders Act, 18 U.S.C. § 4209. He filed a timely appeal to this court which has jurisdiction under 28 U.S.C. § 1291.

18 U.S.C. § 1464 provides as follows:

> "Whoever utters any obscene, indecent, or profane language by means of radio communication shall be fined not more than $10,000 or imprisoned not more than two years, or both."

The evidence established that at the time of the offense charged appellant was a 23-year-old male with a limited education. He had a citizens' band radio license which he operated as a hobby. Without going into the details, it is sufficient to say that a prolonged argument developed over the air between appellant and one Sartain, each broadcasting over a citizens' band radio in Las Vegas, Nevada. Sartain testified that he heard appellant make over the air certain statements which are set out in the record but which we feel need not be set out here. Suffice it to say, it was not parlor language.

Appellant contends that 18 U.S.C. § 1464 is unconstitutional under the Tenth Amendment because it is an attempt to exercise police power reserved to the states. It is well established that Congress has the power under the Commerce Clause, Article I, § 8, cl. 3 of the Constitution, to impose penal sanctions on what it considers to be morally objectionable conduct so long as "the activity sought to be regulated is 'commerce which concerns more States than one' and has a real and substantial relation to the national interest." Heart of Atlanta Motel v. United States, 379 U.S. 241, 255, 85 S.Ct. 348, 356, 13 L.Ed.2d 258 (1964). See, e. g., Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964); United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L. Ed. 609 (1941); Brooks v. United States, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699 (1925); Duncan v. United States, 48 F.

2d 128 (9th Cir. 1931). Cf. Roth v. United States, 354 U.S. 476, 492–493, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

■■ Appellant argues that the activities here involve wholly intrastate transmissions because the normal range of a citizens' radio transmission is from 10 to 25 miles, which would mean that transmissions from Las Vegas, Nevada, would not cross Nevada's borders and because there is no evidence in the record that the transmissions of the appellant were in fact heard outside of Nevada. There is evidence in the record, however, that transmissions of the type appellant was sending are capable of traveling beyond the Nevada border and of being heard in other states under unusual atmospheric conditions. The fact that transmissions over citizens' band radio may cross state borders, either because of unusual atmospheric conditions or because the transmitter is located near a border, justifies a conclusion that such transmissions have a substantial enough effect on interstate commerce to empower Congress to regulate all citizens' band radio. The fact that appellant's isolated transmission may not have traversed state borders is irrelevant since it is the cumulative impact on interstate commerce of all citizens' band radio transmissions which enables Congress to regulate all such transmissions. Heart of Atlanta Motel v. United States, supra, 379 U.S. at 275–277, 85 S.Ct. 348 (Black, J., concurring); Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). In addition, radio receivers located in Las Vegas which are designed to receive interstate transmissions may also be able to receive local citizens' band radio transmissions. The fact that some radio receivers could receive both interstate and intrastate citizens' band communications, thus inevitably creating the probability of interference with interstate communications, also brings the local transmissions within the ambit of the commerce clause. Cf. Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298 (1939).

■■ We also hold that 18 U.S.C. § 1464 does apply to all citizens' band radio communications even where it is not proven that the transmission involved did in fact cross state lines. The original prohibition against "obscene, indecent, or profane" language was enacted as section 29 of the Radio Act of 1927, c. 169, 44 Stat. 1172. It was repealed in 1934 and replaced by section 326 of the Federal Communications Act of 1934, c. 652, 48 Stat. 1091, 47 U.S.C. § 326.[1] In 1948 the last sentence of section 326 was deleted[2] and, as part of the comprehensive revision of the criminal laws under Title 18 of the United States Code, the deleted sentence became 18 U.S.C. § 1464 with slight changes in phraseology. The unqualified language of section 1464 and its predecessors indicates an intended application to all radio communications affecting interstate commerce. In addition, the jurisdiction provision of the Federal Communications Act of 1934, Title III, provides for coverage of intrastate communications affecting interstate communications, which is an explicit Congressional indication that the prohibitions of 18 U.S.C. § 1464 and its predecessors are intended to apply to transmissions over citizens' band radio. Federal Communications Act of 1934, c.

---

1. "Sec. 326. Nothing in this Act shall be understood or construed to give the Commission the power of censorship over the radio communications or signals transmitted by any radio station, and no regulation or condition shall be promulgated or fixed by the Commission which shall interfere with the right of free speech by means of radio communication. *No person within the jurisdiction of the United States shall utter any obscene,*

*indecent, or profane language by means of radio communication.*" (Emphasis added) The language is virtually identical with its predecessor in the Radio Act of 1927, section 29, 44 Stat. 1172.

Violations were penalized under the Federal Communications Act of 1934, c. 652, section 501, 48 Stat. 1100, 47 U.S.C. § 501.

2. The first sentence remained as 47 U.S.C. § 326.

652, § 301(d), 48 Stat. 1081(d), 47 U.S.C. § 301(d).[3]

Other specifications of error are directed to certain jury instructions given by the court, to other instructions requested by the appellant and refused by the court, and to the action of the district judge in sending to the jury while they were deliberating certain instructions in response to a question sent by the jury to the judge. The latter action was taken without the presence, consultation or knowledge of counsel on either side.

The government concedes that two errors occurred involving the instructions to the jury. We agree and find that each is sufficient for reversal.

 The judge's secret instructions to the jury were given at the written request of a jury member who asked:[4]

"Are we to determine the *intention* - of the use of profane and/or obscene language or just the use of the words over a citizen band radio."

The judge responded by memo, stating that:

"You are to only concern yourself with whether the Defendant used Obscene, Indecent, or Profane language over the radio. You are not to concern yourself with the reasons or motive for such use."

The giving of this instruction was prejudicial error because it directly contradicted an earlier instruction given by the trial judge, set out in the margin,[5] to the effect that specific intent was an element needed to be proved in order for the government to secure a conviction. It was also error because it was an erroneous statement of the law: the defendant's intent is a very pertinent and necessary element in a conviction for use of obscenity, see Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 969, 16 L.Ed.2d 31 (1966); Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed. 2d 56 (1966); Smith v. People of State of California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). The giving of an instruction to the jury concerning the substantive law of the trial without the presence or knowledge of counsel for both sides is error of itself, Shields v. United States, 273 U.S. 583, 47 S.Ct. 478, 71 L. Ed. 787 (1927); Ah Fook Chang v. United States, 91 F.2d 805 (9th Cir. 1937).

 In its instructions the court defined obscene language as follows: "An obscene word or words is defined by the

---

3. "No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio * * * (d) within any State when the effects of such use extend beyond the borders of said State, or when interference is caused by such use or operation with the transmission of such energy, communications, or signals from within said State to any place beyond its borders, or from any place beyond its borders to any place within said State * * * except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter." The same jurisdictional grant appeared in section 1 of the Radio Act of 1927, c. 169, 44 Stat. 1162.

Pursuant to its jurisdictional grant in 47 U.S.C. § 301, the Federal Communications Commission has promulgated regulations governing the licensing of Citizens Radio Service. 47 C.F.R. § 95 (1966). Appellant possessed a license which he apparently obtained pursuant to these regulations.

4. The jury also requested the use of a dictionary, which request was denied by the trial judge without the knowledge or presence of either counsel. We do not see how this action by the trial judge could have prejudiced appellant. See Ferrari v. United States, 244 F.2d 132 (9th Cir. 1957).

5. "In every crime, there must exist a union, or joint operation of act and intent. The burden is always upon the prosecution to prove both act and intent beyond a reasonable doubt. With respect to major crimes, such as charged in this case, specific intent must be proved before there can be a conviction. A person who knowingly does an act which the law forbids, intending with bad purpose to disobey or disregard the law, may be found to act with specific intent.

"An act is done knowingly if done voluntarily and intentionally and not because of mistake, accident or other innocent reason."

Supreme Court of the United States as follows: 'If to the average person applying contemporary community standards, the word, or words, have to do with the prurient, the lewd or the lascivious.'" Counsel for the government concedes and we agree that the above instruction was erroneous and not in accordance with the definition of obscene as given by the Supreme Court. In a book named "John Cleland's Memoirs of A Woman of Pleasure" v. Attorney General of Com. of Massachusetts, 383 U.S. 413, 418, 86 S. Ct. 975, 977, 16 L.Ed.2d 1 (1966), the Court stated: "We defined obscenity in Roth [354 U.S. 476 at 479, 77 S.Ct. 1304 at 1311 (1957)] in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.'"

Appellant also contends that his motion of acquittal should have been granted because the language alleged to have been used was not "obscene, indecent, or profane." The government concedes, and we agree, that the language alleged to have been used can in no way be considered "obscene" because the language as a whole can not be viewed as appealing to the prurient or calculated to arouse the animal passions, but rather was made during a moment of anger. Roth v. United States, supra; A Book Named "John Cleland's Memoirs of A Woman of Pleasure" v. Attorney General of Com. of Massachusetts, supra; Duncan v. United States, 48 F.2d 128 (9th Cir. 1931).

Although the district court's instruction defining "profane" is not criticized by appellant, the government does not contend that the words used were "profane." Since the only words attributed to appellant which could even remotely be considered as being "profane" were "God damn it," which were also uttered in anger, there is no basis for holding that the language was "profane" within the meaning of the statute. See Duncan v. United States, supra.

The government's only argument is that the words used were "indecent" within the meaning of that word in section 1464. No instruction defining "indecent" was given by the district court. The government urges now that the three words—"obscene, indecent, and profane"—have different meanings and "indecent" should be defined "as including the extremely vulgar, coarse and offensive use of sexual terminology in a manner far exceeding the bounds of common decency." The government relies heavily upon United States v. Limehouse, 285 U.S. 424, 52 S.Ct. 412, 76 L.Ed. 843 (1932), which held that the word "filthy" which was added to the postal obscenity law by amendment, now 18 U.S.C. § 1461, meant something other than "obscene, lewd, or lascivious," and permitted a prosecution of the sender of a letter which "plainly related to sexual matters" and was "coarse, vulgar, disgusting, indecent; and unquestionably filthy within the popular meaning of that term." [6]

Whether this contention is or is not correct is not before us at this time. The jury should have had the word "indecent" defined for them.[7]

It is for the district court in the first instance to define the word "indecent" in the event there is a second trial. Whether the definition then given is correct or whether such definition violates any constitutional standards is a matter to be determined on review. We do not reach these questions at this time inasmuch as the reversible error referred to above requires that the conviction be re-

---

6. See Cain v. United States, 274 F.2d 598 (2d Cir. 1960); Verner v. United States, 183 F.2d 184 (9th Cir. 1950). See generally, 16 Stan.L.Rev. 463 (1964).

7. Appellant argues that obscene and indecent as used in section 1464 are synonymous. We do not agree that in Duncan v. United States, supra, the court equated "indecent with obscene." A careful reading of that case discloses that the court said that certain language quoted in the opinion was not indecent or obscene. It did not, however, define indecent or say that it meant the same as obscene.

versed and there is a possibility that appellant will be acquitted at a new trial if one is held.

Judgment reversed.