Richard L. **TALLMAN**, Petitioner-Appellant,

v.

**UNITED STATES** of America, Respondent-Appellee.

No. 71–1544.

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1972.

Decided July 6, 1972.

Rehearing Denied July 21, 1972.

---

284

John Donald O'Shea, East Moline, Ill., for petitioner-appellant.

Donald B. Mackay, U. S. Atty., Springfield, Ill., Max J. Lipkin, Asst. U. S. Atty., Peoria, Ill., for appellee.

Before CUMMINGS and STEVENS, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

CUMMINGS, Circuit Judge.

In October 1968, petitioner was indicted for violating 18 U.S.C. § 1464 [2] by uttering "obscene, indecent, or profane language by means of radio communication" on various occasions in 1968. After a jury trial, he was found guilty under Counts I, III and IV of the indictment. The other three Counts were dismissed by the Government.

Under Count I, he was confined to a jail-type institution for 60 days and placed on probation for three years thereafter. Under Counts III and IV, he was also placed on probation for three years, to run concurrently "with each other and with the probation granted on Count One (1)." He was released from confinement on February 26, 1970. According to the United States Probation Officer in charge, the probation period on Count I ended on June 26, 1971, and the probation periods on Counts III and IV are to end on February 25, 1973.[3]

Petitioner was denied leave to file a belated appeal, and in May 1971, he filed a motion to vacate the trial judgment under 28 U.S.C. § 2255. That motion was denied by the district court on the ground that the files and records in the criminal case conclusively show that petitioner is entitled to no relief. This appeal followed.

In his Section 2255 motion, petitioner contends that he has standing since he is still in the custody of a probation officer, subject to certain conditions of probation. The Government concedes that he had standing to sue. The grounds now advanced for vacating the sentences imposed are:

(1) 18 U.S.C. § 1464 is unconstitutional on its face because in failing to require *scienter* and in punishing "profane" or "indecent" utterances it violates the First Amendment and because it thereby is so vague as to run afoul of the Fifth Amendment;

(2) The indictment was defective for the same reasons rendering the statute facially unconstitutional; and

(3) The statute as applied was unconstitutional because the trial court failed to define "profane" or "indecent," failed

1. Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

2. Section 1464 provides:
   "Whoever utters any obscene, indecent, or profane language by means of radio communication shall be fined not more than $10,000 or imprisoned not more than two years, or both."

3. Since the district court's sentence under Count I placed defendant on probation for three years, the probation period under Count I would also seem to end on February 25, 1973.

to instruct the jury on the requirement of *scienter*, and misdefined obscenity.

Federal courts are loath to rewrite state statutes or municipal ordinances to save their constitutionality. However, with respect to Acts of Congress, we will give them a construction to bring them in harmony with constitutional requirements when fairly possible to do so. United States v. Thirty-Seven Photographs, 402 U.S. 363, 368–369, 91 S.Ct. 1400, 28 L.Ed.2d 822; 3 Sutherland, Statutory Construction (3d ed.) § 5904. Applying this cardinal principle to petitioner's argument that Section 1464 fatally fails to require *scienter*, we reject that argument. As to *scienter* Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, still remains the most illuminating guide. There Congress omitted any express prescription of criminal intent or kindred phrases from a statute providing for imprisonment or fine for a person who "embezzles, steals, purloins, or knowingly converts" government property (18 U.S.C. § 641).[4] Speaking for the Court, Mr. Justice Jackson determined that where offenses have their ancestry in common law, such terms as criminal intent, guilty knowledge, willfulness, *scienter* or *mens rea* will be read into statutes, which do not purposely omit them, "to protect those who were not blameworthy in mind from conviction of infamous common-law crimes." 342 U.S. at 252, 72 S.Ct. at 244. In Smith v. California, 361 U.S. 147, 153, n. 9, 80 S.Ct. 215, 219, 4 L.Ed.2d 205, it was stated that "common-law prosecutions for the dissemination of obscene matter strictly adhered to the requirement of *scienter.*" Accordingly, under the *Morissette* rationale, we hold that *scienter* is an ingredient of the crime charged here.[5] The Ninth Circuit has similarly concluded that wrongful intent is a pertinent and necessary element for conviction under 18 U.S.C. § 1464. Gagliardo v. United States, 366 F.2d 720, 724 (9th Cir. 1966). The district judge also so understood, for he instructed the jury on "willfully," "knowingly" and intent. Since this statute is authoritatively construed to require the vital mental state, it is not facially deficient under either the First or Fifth Amendment for omitting scienter. Mishkin v. New York, 383 U.S. 502, 510–511, 86 S.Ct. 958, 16 L.Ed. 2d 56; Amato v. Ruth, 332 F.Supp. 326, 331 (W.D.Wis.1970).

Petitioner next contends that the statute is facially unconstitutional because it employs the terms "indecent" or "profane." The term "indecent" was upheld against constitutional attack in Roth v. United States, 354 U.S. 476, 491, 77 S.Ct. 1304, 1 L.Ed.2d 1498, and the term "profane" was inferentially approved in Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 573, 62 S.Ct. 766, 86 L.Ed. 1031; see also Tate v. Board of Education, etc., 453 F.2d 975, 980 (8th Cir. 1972). Indeed these terms are hardly paragons of precision, but as the Supreme Court emphasized in *Roth*, it "has consistently held that lack of precision is not itself offensive to the requirements of due process * * *. [A]ll that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" 354 U.S. at 491, 77 S.Ct. at 1312. The Court therein quoted with approval its 1896 pronouncement in Rosen v. United States, 161 U.S. 29, 42, 16 S.Ct. 434, 40 L.Ed. 606, that " * * * every one who uses the mail of the United States for carrying papers or publications must take notice of what, in this enlightened age, is meant by de-

---

4. In *Morissette* the Government argued that the term "knowingly" in the statute referred only to the defendant's knowledge that he was taking the property into his possession as distinguished from knowledge of the facts which would make the taking wrongful.

5. See also National Mobilization Committee to End the War in Vietnam v. Foran, 411 F.2d 934, 937 (7th Cir. 1969); United States v. Mancuso, 420 F.2d 556, 558–559 (2d Cir. 1970).

cency * * *." 354 U.S. at 491, n. 28, 77 S.Ct. at 1312. "Profane" is, of course, capable of an overbroad interpretation encompassing protected speech, but it is also construable as denoting certain of those personally reviling epithets naturally tending to provoke violent resentment or denoting language which under contemporary community standards is so grossly offensive to members of the public who actually hear it as to amount to a nuisance. Because this federal statute is perfectly harmonizable with the latter interpretations, it must be so construed to preserve its constitutional validity. See Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L. Ed.2d 408 (March 23, 1972); Chaplinsky v. New Hampshire, *supra*; Williams v. District of Columbia, 136 U.S.App. D.C. 56, 419 F.2d 638, 646 (1969).

■ The trial judge did not undertake to define the terms "indecedent" and "profane," but he had no occasion to do so because he determined that petitioner's utterances were properly classifiable as "obscene," and accordingly instructed the jury only on the theory that the broadcasts might be found to be obscene (see *infra*). Yet the terms "indecent" and "profane" in this statute have been interpreted by other courts. Gagliardo v. United States, *supra*, 366 F.2d at 725; Duncan v. United States, 48 F. 2d 128, 131–134 (9th Cir. 1931); see Williams v. District of Columbia, *supra*. Since this case was tried solely as an obscenity case, the district court rightly considered that "obscene" was the proper theory for submission of this case to the jury, so that instructions that the broadcasts could be found "indecent" or "profane" became unnecessary. Had the district court defined those terms, a constitutional challenge might lie in regard to the content of his definitions.

■ Petitioner's attack on the sufficiency of the indictment must fail because he is ill-postured to make it. It is well settled that the sufficiency of an indictment is not subject to collateral attack save in exceptional circumstances. Collins v. Markley, 346 F.2d 230, 232

(7th Cir. 1965) (defect must be of a "fundamental nature"); Castano v. United States, 313 F.2d 857, 858 (7th Cir. 1963); 2 Wright, Federal Practice and Procedure—Criminal, § 594, p. 596; § 595, p. 607 (1969). As we said in United States v. Shelton, 249 F.2d 871, 874 (7th Cir. 1957), "On a motion to vacate the sentence under Section 2255, the sufficiency of the indictment cannot be questioned, unless it is so defective on its face as not to charge an offense under any reasonable construction." Petitioner's attack grounded on the absence of *scienter* and the vagueness of "indecent" and "profane" plainly does not meet this standard. See United States v. Bandy, 421 F.2d 646, 648 (8th Cir. 1970). Narrowing definitions of "indecent" and "profane" could be properly given in the trial judge's instructions in a case so requiring. The indictment was sufficient here in setting out the essential elements of the offense as they appear in the statute, together with the precise time and place of the utterances and the statement that the utterances themselves were not fit to print, for that recitation adequately apprised the accused of the nature of the offense charged and made effective pleading of a judgment as a bar to subsequent prosecution for the same offense. Similarly, in view of the content of the *scienter* requirement implied in the statute (see *infra*), the indictment need not allege that element; it is sufficient that the prosecution prove it and the jury be charged that finding it is essential to conviction. See United States v. Martell, 335 F.2d 764, 765 (4th Cir. 1964); Delaney v. United States, 199 F.2d 107, 117 (1st Cir. 1952); United States v. Zacher, 332 F.Supp. 883, 885 (E.D.Wis.1971).

■ Even though he made no objections to the instructions given and did not tender any instructions of his own, the petitioner contends the trial judge should have defined "profane" and "indecent" for the jury and misdefined "obscene" by omitting the requirement of *scienter*. Rule 30 of the Federal Rules of Criminal Procedure provides

that "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." In Margoles v. United States, 407 F.2d 727, 735 (7th Cir. 1969), certiorari denied, 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84, we indicated that this provision will be rigorously enforced when instructions are attacked collaterally under Section 2255. See Wright, *op. cit.*, § 595, p. 618. Thus unless the effect of a plain error was a miscarriage of justice, collateral relief is not available. Lorraine v. United States, 444 F.2d 1, 2 (10th Cir. 1971); Hollbrook v. United States, 441 F.2d 371, 373 (6th Cir. 1971). We perceive no such infirmity here.

▮ It is true that the trial judge did not define "profane" or "indecent" in his instructions. However, it is clear from the record that this petitioner was tried only for using obscene language. Accordingly the trial judge told the jury, "Although the indictment includes the words of the statute, namely the adjectives 'obscene, indecent' and 'profane,' the gist of the offense alleged in the indictment is the charge that the defendant wilfully broadcase obscene language." He thereafter focused solely on obscenity, instructing the jury at length on its legal definition.[6] The transcripts of the broadcasts read to the jury show plain filth by any contemporary standards of obscenity, so that there was no need for the jury to determine whether they were also "indecent" or "profane." Because no prejudice to petitioner's substantial rights is thus apparent, we shall not address the belatedly advanced claim of error respecting the trial court's failure to define "profane" or "indecent."

▮ With respect to *scienter*, the instructions given by the trial court reveal no error. The jury was told, for example, that in order to convict the petitioner it must find that he committed the alleged acts "voluntarily with knowledge that it was prohibited by law and with the purpose of violating the law * * *." Insofar as this instruction suggests that the petitioner must be found to have known that his utterances satisfied the legal definition of obscenity, he received the benefit of a more favorable interpretation of the mental element of the crime than he was entitled to. In Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205, on which petitioner mainly relies, a city ordinance was struck down for making a bookseller absolutely liable criminally for the mere possession in his store of a book later judicially determined to be obscene. The fatal defect of the ordinance was that it dispensed entirely with the requirement of "knowledge by appellant of the contents of the book." 361 U.S. at 149, 80 S.Ct. at 216. In contradistinction to knowledge of the facts which make a publication or utterance obscene, the actor need not know the law which would characterize it as such. See Morissette v. United States, 342 U.S. 246, 271, 72 S.Ct. 240, 96 L.Ed. 288; Mishkin v. New York, 383 U.S. 502, 510–511, 86 S.Ct. 958, 16 L.Ed.2d 56; Rosen v. United States, 161 U.S. 29, 41, 16 S.Ct. 434, 40 L.Ed. 606; United States v. West Coast News Co., 357 F.2d 855, 862 (6th Cir. 1966), reversed on other grounds sub nom. Aday v. United States, 388 U.S. 447, 87 S.Ct. 2095, 18 L.Ed.2d 1309; Kahm v. United States, 300 F.2d 78, 86 (5th Cir. 1962), certiorari denied, 369 U.S. 859, 82 S.Ct. 949, 8 L.Ed.2d 18; United States v. Zacher, 332 F.Supp. 883, 884–885 (E.D.Wis. 1971). Unlike the bookseller in *Smith*,

---

6. Since petitioner did not object to the elaborate obscenity instructions given, he may not now complain that the trial judge failed to instruct the jury that in order to be obscene under a Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Com. of Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 16 L.Ed.2d 1, the broadcast materials must be utterly without redeeming social value. A review of the record reveals no plain error resulting in a miscarriage of justice.

who would not know the contents of all the books in his store and who could not be presumed to know their contents without substantially restricting freedom of speech and of the press, petitioner here necessarily knew the content of his own utterances. Thus the common law mental element required for conviction under 18 U.S.C. § 1464, here more appropriately termed intent than *scienter*, would be satisfied if the defendant knew or reasonably should have known that uttering the words he did over the air was a public wrong. See United States v. Cullen, 454 F.2d 386, 392 (7th Cir. 1971). The trial court's instructions on intent certainly satisfied this requirement.

■ In United States v. Smith, No. 71–1579, a related case to this, the appellant relied on Cohen v. California, 403 U.S. 15, 26, 91 S.Ct. 1780, 29 L.Ed.2d 284, where it was held that a state could not "consistently with the First and Fourteenth Amendments, make the simple public display * * * of this single 4-letter expletive a criminal offense." The ordinance involved there prohibited disturbance of the "peace or quiet of any neighborhood or person * * * by * * * offensive conduct * * *." Appellant testified that he displayed the expletive in relation to the draft in order to inform the public of the depth of his feelings against the Vietnam War and the draft. Since this display was not directed to the person of the hearer and could not have been reasonably regarded by persons who saw it as a direct personal insult, it could not be banned under the rationale of Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031. That decision upheld the ability of the states "to ban the simple use, without a demonstration of additional justifying circumstances, of so-called 'fighting words,' those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." 403 U.S. 15, 20, 91 S.Ct. 1780, 1785. Since Mr. Justice Harlan, speaking for the majority in *Cohen*, expressly noted it was not an obscenity case (*Id.*), and since Tallman was tried solely on an obscenity basis, the *Cohen* holding is of little import here. However, the transcripts of these broadcasts show that Tallman could not derive any solace from *Cohen* because his utterances are devoid of any communicative function other than personally to abuse and provoke. Such "fighting words" could be proscribed under Chaplinsky. Cf. Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (March 23, 1972).

Affirmed.