**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Clarence P. BROWN,
Defendant-Appellant.**

No. 81–1221.

United States Court of Appeals,
Tenth Circuit.

Submitted Aug. 20, 1981.

Decided Oct. 14, 1981.

Certiorari Denied Dec. 14, 1981.
See 102 S.Ct. 979.

Ronald Aal, Brighton, Colo., for defendant-appellant.

Carole C. Dominguin, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., with her on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, McKAY and LOGAN, Circuit Judges.

PER CURIAM.

Clarence P. Brown appeals his conviction by jury for transmitting radio energy without a license in violation of 47 U.S.C. § 301(d). The only question on appeal is whether the trial court's instruction to the jury was erroneous when it did not state that the government must show the signals actually left the state.[1]

Based upon radio transmissions they intercepted in Arvada, Colorado, agents of the Federal Communications Commission (FCC) obtained an affidavit for a search warrant. Pursuant thereto they confiscated from Brown's residence a citizens' band type radio transmitter, linear amplifiers, and other radio transmitting apparatus capable of transmitting signals over a hundred miles. The agents testified that although they intercepted the radio signals within Colorado, only a few miles from Brown's transmitter, the wattage of the transmissions was greater than the FCC allows for citizens' band use, and the transmissions could have crossed state borders or interfered with interstate radio signals.

Radio communications have traditionally been considered interstate commerce and subject to federal regulation. *Pulitzer Publishing Co. v. FCC*, 94 F.2d 249, 251 (D.C. Cir.1937). *See WOKO, Inc. v. FCC*, 153

---

1. The trial judge gave the following instruction, in pertinent part:

"First, the act or acts of using and operating an apparatus for transmission of energy, communications or signal by radio, thereby transmitting energy, communications or signals by radio when the effects of such use extend or could extend beyond the borders of the State of Colorado.

"Second, doing such act or acts without a license first having been granted.

"Third, doing such act or acts knowingly and willfully . . . .

"You are instructed that in order to establish that the effects of transmission of energy, communications or signals by radio from and within the State of Colorado extend beyond the borders of said state, the government need not prove that the radio signals actually traversed state borders. The fact that radio transmissions may not have traversed state borders is irrelevant."

F.2d 623, 628 (D.C.Cir.), *rev'd on other grounds*, 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204 (1946) (plenary power). *Cf. Gagliardo v. United States*, 366 F.2d 720, 723 (9th Cir. 1966) (construing 18 U,S.C. § 1464). The issue at bar is one of statutory construction, whether under the "effects" test of 47 U.S.C. § 301(d) the government must prove the signals actually extended across a state border. The government offered no proof here that Brown's transmission actually interfered with interstate transmissions or that it crossed a state's border. The statute declares that "No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio . . . (d) within any State when the *effects* of such use extend beyond the borders of said State." 47 U.S.C. § 301 (emphasis added).

The statute states expressly that the United States intends to control all channels of interstate radio transmission.[2] *Cf. American Radio Relay League, Inc. v. FCC*, 617 F.2d 875 (D.C.Cir.1980) (upholding FCC authority to prohibit manufacture and sale of amplifiers that might be misused by citizens' band operators). We need not consider here all possible applications of the "effects" test for violation of subsection (d); we hold, however, that it is satisfied by proof that defendant's transmission was powerful enough to cross the state border. Requiring the prosecuting authorities to monitor defendant's signal from a point outside the state in order to sustain his conviction seems to us to impose a greater burden than the statute contemplates. The evidence presented to the jury in the instant case was sufficient to support its judgment that Brown violated the statute. The jury instruction correctly reflected the applicable law.

AFFIRMED.

McKAY, Circuit Judge, dissenting:

The problem here is that after the government had presented its case, neither the prosecutor, nor the trial court, nor a majority of this court has been content to enforce the radio broadcasting license statute as Congress wrote it.[1] Oddly enough,

---

2. 47 U.S.C. § 301 reads as follows:

"*It is the purpose of this chapter, among other things, to maintain the control of the United States over all the channels of interstate and foreign radio transmission*; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority, and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license. No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio (a) from one place in any Territory or possession of the United States or in the District of Columbia to another place in the same Territory, possession, or District; or (b) from any State, Territory, or possession of the United States, or from the District of Columbia to any other State, Territory, or possession of the United States; or (c) from any place in any State, Territory, or possession of the United States, or in the District of Columbia, to any place in any foreign country or to any vessel; or (d) within any State when the effects of such use extend beyond the borders of said State, or when interference is caused by such use or operation with the transmission of such energy, communications, or signals from within said State to any place beyond its borders, or from any place beyond its borders to any place within said State, or with the transmission or reception of such energy, communications, or signals from and/or to places beyond the borders of said State; or (e) upon any vessel or aircraft of the United States; or (f) upon any other mobile stations within the jurisdiction of the United States, except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter."
47 U.S.C. § 301 (emphasis added).

1. 47 U.S.C. § 301 reads as follows:

It is the purpose of this chapter, among other things to maintain the control of the United States over all the channels of interstate and foreign radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority, and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license. No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio (a) from one place in any Territory or possession of the United States or in the District of Columbia to another place in the same Territory, possession, or District; or (b) from any State, Territory, or possession of the United States, or from

the prosecutor correctly charged the defendant according to Congress' expressed intent but was not content to have the jury charged accordingly. The defendant was charged with making a transmission "the effects of which *did extend* beyond the borders" of the state without the proper license. (Tr. p. 4, emphasis supplied). While the testimony might have supported such a charge before a properly instructed jury, over objection the trial court added a verb to the statutory prohibition that Congress did not use. This court now ratifies in this criminal case that attempt either to help Congress do what it meant but failed to do, or, more likely, what Congress did not intend to do at all. Instead of properly charging the jury that:

> Three essential elements are required to be proved in order to establish the offense charged in the information. First, the act or acts of using and operating certain apparatus for transmission of energy, communications, or signals by radio, thereby transmitting energy, communications, or signals by radio when the effects of such use extended ... beyond the borders of the State of Colorado,

the court improperly added "or could extend," thus changing the theory both from that charged and that authorized by Congress. If Congress had intended to regulate broadcasts which could but do not in fact extend beyond state boundaries, it was capable of saying so. Apparently even the prosecutor read Congress' clear language to require actual border-crossing when the complaint was prepared and filed. No fair justification has been given for departing from Congress' expressed intent.

The issue in this case, then, is to what extent Congress, in fact, exercised its theoretically plenary powers over broadcasting in 47 U.S.C. § 301.[2] We must be guided by Congress' language in determining how much of its power Congress actually exercised. The language of the statute makes clear that Congress intended to regulate less than its full commerce clause power. Subsection (d) of 47 U.S.C. § 301, the relevant subsection in this case, covers two kinds of broadcasts: (1) those whose effects extend beyond state borders, and (2) those whose effects do not extend beyond state borders but which interfere with other broadcasts that themselves extend beyond state borders. The government has conceded that the second condition is not involved in this case. The effect of ratifying the instruction in this case is to greatly expand criminal jurisdiction in the face of a contrary congressional intent and counter to the obvious purposes apparent in the general structure of the statutory scheme. While the majority does not think we must concern ourselves with all the persons who might be caught unaware by this expansive rewording of the statute, it seems clear that just such an unwarranted result occurs when it is not necessary.

Apparently, the concern which motivates this court to expand Congress' express intent flows from some misplaced concern

the District of Columbia to any other State, Territory, or possession of the United States; or (c) from any place in any State, Territory, or possession of the United States, or in the District of Columbia, to any place in any foreign country or to any vessel; or (d) within any State when the effects of such use extend beyond the borders of said State, or when interference is caused by such use or operation with the transmission of such energy, communications, or signals from within said State to any place beyond its borders, or from any place beyond its borders to any place within said State, or with the transmission or reception of such energy, communications, or signals from and/or to places beyond the borders of said State; or (e) upon any vessel or aircraft of the United States; or

(f) upon any other mobile stations within the jurisdiction of the United States, except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter.

2. The court in Gagliardo v. United States, 366 F.2d 720 (9th Cir. 1966), made the same mistake regarding 47 U.S.C. § 301(d) that the majority of this court makes today. In determining the extent of Congress' power to regulate the broadcast of obscene, indecent, or profane language under 18 U.S.C. § 1464, the *Gagliardo* court interpreted the language in 47 U.S.C. § 301(d) to be evidence that Congress intended to regulate all citizen's band broadcasts, both intra- and interstate.

858

that neither Congress nor the FCC is capable of devising a method to prove the violations that Congress defined. The evidence in this case itself shows that there is a very simple way to prove that a particular broadcast extended beyond the borders of the state of origin without ringing the state with monitors. The government's expert testified that he was able to measure the strength of the broadcast and that the strength of broadcast required to reach from the place of broadcast to the state border can easily be determined. Simple expert testimony growing out of the investigation giving rise to the charge could satisfy the government's burden if, in fact, the defendant has done unlicensed what Congress has forbidden. The evil in this case is that the effect of the jury instruction was to permit the jury to convict, even if it disbelieved the expert testimony in this case.

It is possible that some of the confusion in this case arises from a failure to understand the difference between proof of interstate transmissions by expert testimony or circumstantial evidence and proof through the evidence of actual interstate monitoring. Because this is a criminal case, the expert must testify to more than that the broadcast could leave the state. He must testify that given its strength, it *would* leave the state. That is scientifically possible in all cases involving broadcasts intended to be regulated by Congress. Of course, had this been a case based on interference with other interstate broadcasts, the proof of actual interference would be necessary and no more difficult.