**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT JACKSON**
**NOVEMBER SESSION, 1997**

FILED

January 12, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

ROGER LEE KIMMEL,     )
                               )     No. 02C01-9701-CR-00006
       Appellant       )
                               )     SHELBY COUNTY
vs.                        )
                               )     Hon. JOSEPH B. DAILEY, Judge
STATE OF TENNESSEE,   )
                               )     (Writ of Habeas Corpus)
       Appellee        )

For the Appellant:

**Roger Lee Kimmel**, *Pro Se*
P. O. Box 1000
Henning, TN  38041-1000

For the Appellee:

**Charles W. Burson**
Attorney General and Reporter

**Kenneth W. Rucker**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**William David Bridgers**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

**OPINION**

The appellant, Roger Lee Kimmel, appeals the Shelby County Criminal Court's dismissal of his *pro se* application for writ of habeas corpus. In 1996, a Lake County Grand Jury returned a two count indictment charging the appellant with the offenses of rape of a child and aggravated sexual battery. On March 25, 1996, the appellant pled guilty to the offense of aggravated sexual battery and was sentenced to eight years in the Department of Correction. The appellant is currently incarcerated at the Mark H. Luttrell Reception Center in Memphis.

On September 13, 1996, the appellant filed an application for a writ of habeas corpus alleging that the judgment entered against him on the charge of aggravated sexual battery is void because the indictment failed to allege the *mens rea* of the offense charged. Finding that the appellant's petition "failed to state a claim upon which relief may be granted," the trial court dismissed the appellant's application. The appellant now appeals this decision alleging that the trial court erred in dismissing his petition and, in the alternative, that the indictment is fatally defective.[1]

After a review of the record, we affirm the decision of the trial court.

**I. Dismissal of Application for Writ of Habeas Corpus**

The appellant first contests, regardless of the merits of his claims and with disregard of the court's finding that the petition failed to state a cognizable ground for relief, the court's dismissal of his application for writ of habeas corpus for failure

---

[1]Initially, we note that the petitioner did not timely file his notice of appeal. The trial court's order was entered on October 12, 1996, but the notice of appeal was not filed until December 12, 1996. In the interest of justice, however, we have decided to waive the timely filing of the notice of appeal. See Tenn. R. App. P. 4(a).

2

to cite to any authority. The appellant argues that the indictment is fatally defective for failure to allege the mental state of the offense charged. In other words, the appellant contends that the indictment failed to charge an offense and, therefore, no offense is before the court. See Tenn. R. Crim. P. 12(b) (a defect alleging the subject matter jurisdiction or failure to allege an offense may be raised at any time). See also State v. Perkinson, 867 S.W.2d 1, 5-6 (Tenn. Crim. App. 1992).

The indictment against the appellant reads:

. . .[T]he defendant, ROGER LEE KIMMEL, on or about October 30, 1995, . . . unlawfully had sexual contact with [the victim], a child less than thirteen (13) years of age at the time of the commission of the offense . . . .

Habeas corpus relief is available only when it appears upon the face of judgment or record of proceedings upon which judgment is rendered that the convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment or other restraint has expired. Archer v. State, 851 S.W.2d 157, 164 (Tenn.1993). If, from the face of the petition, the reviewing court finds nothing to indicate that the appellant's challenged conviction might be void, the court may refuse the application without a hearing. See Tenn. Code Ann. § 29-21-101, -109 (1980).

In order to satisfy both constitutional and statutory guidelines, an indictment must contain the material elements of the offense and must sufficiently apprise the accused of the offense he is called upon to defend.[2] State v. Tate, 912 S.W.2d 785, 789 (Tenn. Crim. App. 1995); see also Tenn. Code Ann. § 40-13-202 (1990); State v. Perkinson, 867 S.W.2d 1, 5 (Tenn. Crim. App. 1992). When an offense "neither expressly requires nor plainly dispenses with the requirement for a culpable mental

---

[2]"The true test of the sufficiency of the indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and 'sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419 (1931) (citations omitted).

3

state, an indictment which fails to allege such mental state will be sufficient to support prosecution and conviction for that offense so long as:

> (1) the language of the indictment is sufficient to meet the constitutional requirements of notice to the accused of the charge against which the accused must defend, adequate basis for entry of proper judgment; and protection from double jeopardy;
>
> (2) the form of the indictment meets the requirements of Tenn. Code Ann. § 40-13-202; and
>
> (3) the mental state can be logically inferred from the conduct alleged.

State v. Hill, No. 01S01-9701-CC-00005 (Tenn. Nov. 3, 1997) (*for publication*).

The conduct in the indictment before us alleges that the defendant had "sexual contact" with the victim. Thus, the relevant question is whether from this alleged conduct it "can be logically inferred" that the appellant was acting intentionally, knowingly or recklessly. Tenn. Code Ann. § 39-11-301(c) (1991). We find no such inference. In Hill, our supreme court found the language "unlawful sexual penetration" sufficiently encompassing to support an inference that the penetration was committed intentionally, knowingly or recklessly. This is to say that, logically, for penetration to occur, it cannot be committed accidently or in any manner other than intentionally, knowingly or recklessly. However, the alleged conduct in the instant case is factually distinguishable.

The phrase "sexual contact" infers no mental state.[3] Moreover, we note that sexual battery is not a crime of strict liability. We are, therefore, unable to conclude that the language "sexual contact" excludes all inferences other than that the offense of aggravated sexual battery was committed intentionally, knowingly or

---

[3] We also acknowledge the previous rulings of this court holding that "the term 'unlawful' does not sufficiently allege the *mens rea* of intent." State v. Jones, No. 02C01-9503-CR-00061 (Tenn. Crim. App. at Jackson, Mar. 7, 1997); State v. Hill, No. 01C01-9508-CC-00267 (Tenn. Crim. App. at Nashville, June 20, 1996); State v. White, No. 03C01-9408-CR-00277 (Tenn. Crim. App. at Knoxville, June 7, 1995). The term "'unlawfully' does not in the ordinary use of the word connote mental culpability." Id.

recklessly. Clearly, "sexual contact" could include an accidental or inadvertent act of contact between the accused and the victim.[4]

The supreme court's ruling in <u>Hill</u> holds that, for offenses which neither expressly require nor plainly dispense with the requirement for a culpable mental state, "the required mental state may be inferred from the nature of the criminal conduct alleged. <u>Id</u>. at 9. In contrast to <u>Hill</u>, the question before us is distinguished: Is an indictment facially valid which charges an offense where the statute defining the offense does not contain a mental state and no mental state can be inferred from the conduct alleged? We hold that the challenged indictment is valid.

The culpability requirements of our criminal code are virtually a verbatim recitation of the culpability requirements of the MODEL PENAL CODE. See Tenn. Code Ann. § 39-11-301 *et. seq.* (1991). The corresponding section of the MODEL PENAL CODE, Section 2.02(3), to our provision Tenn. Code Ann. § 39-11-301(c), provides:

> (3) <u>Culpability Required Unless Otherwise Provided</u>. When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts purposely,[5] knowingly or recklessly with respect thereto.

We find it helpful to review the MODEL PENAL CODE COMMISSION COMMENTARY which follows the above subsection for an explanation of its purpose and objective.

> Subsection (3) is included as an aid to drafting the definitions of specific crimes. When it is intended that purpose, knowledge or

---

[4]We likewise reject importation of the definition of the term "sexual contact" to supply the *mens rea* to the statutory definition of the offense. A majority of jurisdictions have held that the omission of an essential element from the charging instrument cannot be cured by a citation or reference to the relevant statute. <u>State v. Marshall</u>, 870 S.W.2d 532, 537 (Tenn. Crim. App. 1993)(citing <u>United States v. Pupo</u>, 841 F.2d 1235 (4th Cir. 1988)). <u>See also</u> <u>U.S. v. Hooker</u>, 841 F.2d 1225, 1227-1228 (4th Cir. 1988)(citing at least eight federal circuits in accord with this rule and "the vast majority of the state courts"). "[I]t is the statement of facts in the pleading, rather than the statutory citation that is controlling." <u>Hooker</u>, 841 S.W.2d at 1227-1228 (citing <u>United States v. Wuco</u>, 535 F.2d 1200, 1202 n. 1 (9th Cir. 1976); <u>United States v. Hutcheson</u>, 312 U.S. 219, 229, 61 S.Ct. 463, 464 (1941)).

[5]In codifying the MODEL CODE culpability requirements, our legislature chose to substitute "intentionally" for "purposely."

recklessness suffice for the establishment of culpability for a particular offense, <u>the draftsmen need make no provision for culpability; it will be supplied by this subsection. There is a rough correspondence between this provision and the common law requirement of "general intent</u>."[6]

In <u>State v. Dison</u>, No. 03C01-9602-CC-00051 (Tenn. Crim. App. at Knoxville, Jan. 31, 1997), we held that, because no mental state was included in the definition of the offense, none need be alleged in the indictment because the offense charged is a general intent crime.  Other jurisdictions which have codified the culpability requirements of the MODEL PENAL CODE, as has Tennessee, have followed this approach. <u>See</u> <u>People v. Norris</u>, 88 Cal. App. 2d Supp. 32, 37, 152 Cal. Rptr. 134-137 (1978); <u>State v. Bitting</u>, 291 A.2d 240, 242 (Conn. 1971);  <u>People v. Thompson</u>, 466 N.E.2d 380, 384-387 (Ill. App. 2nd Dist. 1984); <u>State v. Ayer</u>, 612 A.2d 923, 925 (N.H. 1992).  <u>See also</u> <u>United States v. Garrett</u>, 984 F.2d 1402, 1415 (5th Cir. 1993); <u>Tallman v. United States</u>, 465 F.2d 282 (7th Cir. 1972).  Moreover, legal treatises are in agreement with this approach.  In modern practice, it is unnecessary to charge guilty knowledge unless it is included in the statutory definition of the offense.  <u>Hill</u>, No. 01S01-9701-CC-00005 (citing 41 Am.Jur.2d, *Indictments and Information*, § 126 (1995)).  In sum, the *mens rea* requirement, omitted from a statutory definition, need not be alleged in the charging instrument because it is imputed by the statute.  Tenn Code Ann. § 39-11-301(c).  The distinguishing factor is the legislature's <u>prerogative</u> of a mental state from a range of culpability. <u>Dison</u>, No. 03C01-9602-CC-0005.  Thus, we conclude that when the legislature has explicitly omitted the mental state in the definition of a crime, the crime is one of "general intent."  Accordingly, we find the offense of aggravated sexual battery a general intent crime and no mental state need be alleged in the indictment.

---

[6]The drafters of the Illinois Criminal Code remarked, "Reference to 'general intent' crimes seems unnecessary, if the definition of a particular offense describes accurately the mental state involved - a specific intent if that is appropriate, or [a general intent, i.e.,] the knowledge of specified facts or of the natural consequences of described acts."  <u>See</u> Committee Comments, 720 Ill. Comp. Stat. Ann. 5/4-3 (West 1993).

The dilemma is further compounded in the present case with the question: If the "required mental state may be inferred," which mental state is required? Aggravated sexual battery requires an <u>intentional</u> touching which must be reasonably construed as being for the purpose of sexual arousal or gratification. Tenn. Code Ann. § 39-13-504 (1991). The elements of the offense of aggravated sexual battery as charged by the indictment in this case requires proof (1) of sexual contact, which includes the <u>intentional</u> touching of the victim[7] and (2) that the victim was less than thirteen years of age. Thus, the mental state of the first element is that of "intentional" while the mental state for the latter element is either intentional, knowing or reckless because no mental state for that element or the offense is defined. Tenn. Code Ann. § 39-11-301(a)(1) and (c). Thus, to require a finding of only one mental state, for example, recklessness, for the instant offense would be inconsistent and irreconcilable with the remaining element which requires intentional culpability. The end result is a reckless-intentional crime. Indeed, many of our statutory offenses are so structured to contain differing mental states for the respective elements. This is further complicated by the fact that, as originally enacted, Title 39 of the Criminal Code of 1989 contained eighty-seven crimes which specify no mental element. Additionally, numerous statutory offenses exist which contain two mental states, permitting the selection of one.[8] The MODEL CODE and our criminal code clearly contemplate that culpability must be addressed separately with respect to each material element. Section 2.02 MODEL PENAL CODE. "A person commits an offense who acts intentionally, knowingly, recklessly or with criminal negligence as the definition of the offense requires <u>with respect to each element of the offense</u>." Tenn. Code Ann. § 39-11-301 (a)(1). In reviewing MODEL CODE crimes,

---

[7]"Sexual contact" is defined to "include the intentional touching of the victim's, the defendant's or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501 (6) (1991).

[8]A greater burden, therefore, is then placed upon the trial courts who bear the responsibility of determining "<u>the</u> required mental state," <u>see</u> Hilll, No. 01S01-9701-CC-00005, in hopes that "<u>the</u> required mental state" selected will withstand appellate scrutiny.

it must be recognized that the *mens rea* requirements of a particular crime may differ with regard to the different elements of the crime. Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law 194(1977). See also State v. Parker, 887 S.W.2d 825 (Tenn. Crim. App. 1994) (recognizing the mental states of intentional and recklessness in aggravated sexual battery). We hold this rationale to be consistent with our conclusion that the culpability requirements of our criminal code do not require, as in this case, the inclusion of a designated mental state in the charging instrument where none is contained in the statutory offense.

For these reasons and the plethora of authority supporting this position, we conclude that the indictment in the present case was constitutionally sufficient.

_____
DAVID G. HAYES, JUDGE

CONCUR:

(SEE CONCURRING OPINION_____
GARY R. WADE, JUDGE

_____
PAUL G. SUMMERS, JUDGE